## Johnson's Petition.

Argued November 25, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*George W. Keitel,* Assistant Deputy Attorney General, with him *Claude T. Reno,* Attorney General, and *John W. Himebaugh,* for appellant.

*F. B. Hosbach,* of *Hosbach & Gleeten,* for appellee.

*Clarence M. Lawyer, Jr.* and *Herbert B. Cohen,* filed a brief under Rule 61.

OPINION BY MR. JUSTICE PARKER, January 26, 1942:

The question raised by this appeal is whether, under the circumstances present here, diversion of traffic is an element to be considered in determining the damages due a land owner as a result of the Commonwealth's taking a portion of a tract of land for the purpose of relocating a road, under the provisions of the so-called "Sproul Act" of May 31, 1911, P. L. 468, as amended (36 PS §61). The land owner, on appeal from an award of viewers, secured a judgment and the Commonwealth has appealed from the refusal of the court below to grant a new trial.

Dean L. Johnson, the appellee, owned a lot having a frontage of approximately five rods on the north side of State Highway Route No. 20 and a depth of approximately twenty rods, containing about three-fifths of an acre and improved by a building used as a restaurant and beer parlor, a dwelling house, and a garage. The buildings, all on the south end of the lot, were arranged to face the old road and there was an old orchard on the

north end. The north portion of the lot was not used in connection with appellee's business. The state highway was relocated so that it has taken from the north end of the entire tract about one-tenth of an acre. The original road, where replaced by the new road, reverted to the township and remains open to public travel. The change in location was made by leaving the old road at points about one-fourth of a mile west and about one mile east of appellee's land. Those points were connected by a new road approximately in a straight line with a wider right of way and wider pavement. The number of appellee's patrons was materially reduced as a result of the diversion of traffic from the old to the new route. It was shown on cross-examination of appellee's witnesses that, in fixing the difference in market value before and after the taking, all those witnesses took into account diversion of traffic and allowed a considerable portion of their estimate on that account. The court below, in its opinion refusing a new trial, said there was no doubt "that the diversion of traffic constituted a large part of the decreased value", as fixed by appellee's witnesses.

The question now presented was raised in the court below by exceptions to the charge to the jury and is raised here by the assignments of error. It deserves careful consideration.

It is apparent that land has been actually taken by the Commonwealth and that it is therefore liable for such damages as have been occasioned by the taking. The measure of damages where there has been an actual taking of land by the Commonwealth in an eminent domain proceeding is the difference in market value of the whole tract, of which the land taken is a part, before the taking and the market value of the land remaining after the taking, as affected by the taking: *Schuylkill Navigation Co. v. Thoburn*, 7 S. & R. 410; *Hoffman v. Phila.*, 250 Pa. 1, 8, 95 A. 322; *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 375, 176 A. 13; *Butler Water Company's Petition*, 338 Pa. 282, 13 A. 2d 72.

In *Puloka v. Com.*, 323 Pa. 36, 185 A. 801, we applied the general rule and rejected the contentions of the Commonwealth that it was liable under section 16 of the "Sproul Act", as amended by Acts of April 13, 1933, P. L. 41, and July 12, 1935, P. L. 946, only for the value of the portion of the tract actually taken, and that the Commonwealth was not liable for consequential damages.

Experience has demonstrated that market value of land cannot be determined with exactitude and that competent and honest experts are bound to differ when they express values in dollars. Consequently, when jurors are called upon to make a final decision as to values, they are entitled to know how the experts have arrived at their estimates, what elements they have placed in the scales in solving the problem. At the same time it must be remembered that "estimates as to the costs of rebuilding specific items of property or injury to particular uses affected by the taking, are not recoverable or admissible as distinct items of damage, but such losses may become useful as elements bearing on the market value before and after the appropriation": *Westinghouse Air Brake Co. v. Pittsburgh,* supra (p. 375). The land owner insists that decrease in traffic resulting in loss of business is here a proper element for consideration insofar as it affects market value, and this in turn is denied by the Commonwealth.

The legal question is clearly raised, without complications. The land owner's business plant has not been disturbed in any respect by the laying out of a new road on the north end of the lot and at some distance from the buildings. Access to the public road has not been disturbed and the road remains just as it has existed for years. The new road has not separated the buildings or interfered with their operation in any way. The restaurant faces the same road it always did and the patrons of the restaurant, the traveling public, have the same approach in all directions that they always had. While

it is true that many who formerly passed on the road south of appellee's restaurant now take another route, resulting in loss of custom to appellee, this change in travel is due not to the taking of appellee's land but to a change in the road system of that locality whereby the travelers at points one-quarter mile and one mile from appellee's land are given the choice of alternative routes having different attractions.

While the appellee is entitled to be compensated for loss in market value, it does not follow that the Commonwealth is responsible for every result that may ensue where a public improvement is made. "There are many injuries resulting from the opening of streets and roads for which land owners cannot receive compensation": 1 Elliott, Roads & Bridges, p. 59. The loss may be due to other causes than the taking or the connection between the consequences and the taking of the land may be so remote as to require that that element be excluded from consideration. In *Schuylkill Navigation Co. v. Thoburn,* supra (p. 421), Mr. Justice (later Chief Justice) GIBSON said, when speaking of fixing the value after the taking: "The amount, clearly, could not be enhanced, or in any way affected by subsequent injuries, the *consequences* of the obstruction", and then stated that the question is: "What would it have sold for, as affected by the injury?"

While advantages, as well as disadvantages, are to be considered in eminent domain cases, we said in *Pittsburgh, etc., Ry. Co. v. McCloskey,* 110 Pa. 436, 442, 1 A. 555: "The general increase of values, resulting from the growth of public improvements, railroads, canals and highways, accrues to the public benefit, and in the computation of damages, the landowner cannot be charged therewith. The question, in each case, is whether or not the special facilities afforded by the improvement have advanced the market value of the property, beyond the mere general appreciation of property in the neighborhood."

Likewise in *Iron City Auto. Co. v. Pittsburgh,* 253 Pa. 478, 494, 98 A. 679, we said, in considering the mandates

of the present constitution: "Under no circumstances can 'profits of business' be claimed in condemnation proceedings." Also see *Becker v. P. & R. T. R. Co.*, 177 Pa. 252, 258, 35 A. 617.

It is for the loss in market value, *due to the taking,* that the Commonwealth is responsible. The owner's property rights were not invaded nor was there any legal injury to it by reason of the mere fact that the Commonwealth provided an additional road with the result that the public had the choice of two routes and the travelers might choose the new route in preference to the old one. The state owed no duty to the appellee to see that travel continued to pass by his door. The current of public travel is bound to shift as affected by innumerable conditions. "Benefits which come and go with changing currents of public travel are not matters in which any individual has any vested right against the judgment of those public officials whose duty it is to build and maintain these highways": *Nelson v. State Highway Board,* 110 Vt. 44, 1 A. 2d 689, 693, 118 A. L. R. 915. (Also see note attached, p. 921.)

The owner of land abutting on a highway has no property or other vested right in the continuance of a certain amount of traffic over that highway so long as he is not deprived of ingress and egress. Here the diversion of traffic was not due to the taking of appellee's land, but was occasioned by the laying out of a new road which attracted the public. At best the diversion of traffic was such a *consequence* as was referred to by Chief Justice GIBSON in the case of *Schuylkill Navigation Co. v. Thoburn,* supra. In any event, the consequences here were too far removed from the taking to form the basis of a claim of legal injury. This thought was expressed by Mr. Justice STERN in *Heil v. Allegheny County,* 330 Pa. 449, 456, 199 A. 341: "The only practical effect of the relocation is that vehicular traffic now has a choice of two routes at the point of divergence and therefore the number of vehicles passing plaintiff's property is naturally

reduced. The same result would have occurred if an entirely new highway had been built parallel with the existing one, especially if of better construction. Every improved road takes away travel from older ones and thereby to some extent diminishes the commercial value of properties abutting on the older roads. It is highly dubious whether damage of that kind constitutes injury to the property that would be compensable under existing statutes providing for the liability of the various local agencies of government in their exercise of the right of eminent domain."

To adopt the contention of the land owner as a general legal principle would lend to absurd results. Assume, for the sake of argument, that the state had taken only a few square feet from the northern tip of this land. Then under appellee's theory he would have been entitled to have diversion of traffic considered in determining the market value after the taking. This illustration shows that the claim made here is not for damages due to the taking of the north corner of this land but for an ensuing result that was too remote to have relevance in fixing damages. The loss in traffic was directly due to changes in the connection at points remote from the land taken. The results were not peculiar to this land owner but were shared to a greater or less degree by all properties located on the old road. It followed as a result of the highway department's determining that an additional route should be furnished for the accommodation of the public and the result is damnum absque injuria.

The appellee and the court below relied heavily upon the case of *Regina v. Monroe County*, 319 Pa. 257, 179 A. 36. While the language employed in that case might afford some ground for argument, we believe the situations are distinguishable. There, as here, there was a change of route and the old road remained but the new road passed immediately at the rear of the land owner's hotel or boarding house and the change made necessary the destruction of a barn or wagon shed, an ice house, and

a hog pen. It divided the tract into two parts and separated the hotel from the building used as a barn or garage. The result was that it became necessary to make changes in the land owner's plant, and these were due to the change of the location of the road with consequent diversion of traffic. Diversion of traffic was there incidentally involved but sufficiently to be relevant.

Judgment reversed and a venire facias de novo awarded.