STATE HIGHWAY COMMISSIONER *v.* WATT.

EMINENT DOMAIN—PARTIAL TAKING—MOTEL—ACCESS—DIVERSION OF TRAFFIC.
Diversion of traffic may not properly be considered as an element of damage for the taking of part of a parcel of land occupied by a motel, where there is no interference with the right of access.
DETHMERS, KELLY, and SOURIS, JJ., dissenting.

Appeal from Wexford; Peterson (William R.), J. Submitted October 9, 1963. (Calendar No. 16, Docket No. 50,092.) Decided January 4, 1965.

In the matter of the petition of John C. Mackie, State Highway Commissioner, for condemnation of property of Thomas B. Watt and Gladys M. Watt for highway purposes, the report of commissioners as to damages was set aside. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso,* Assistant Attorney General, for plaintiff.

*Jack W. Korn* and *Floyd T. Fuss,* for defendants.

*Warner, Norcross & Judd (Harold S. Sawyer* and *Wallson G. Knack,* of counsel), *amici curiae.*

KELLY, J. (*dissenting*). Three commissioners appointed by the trial court reported that appellants

REFERENCES FOR POINTS IN HEADNOTE
18 Am Jur, Eminent Domain §§ 270, 280.

should receive $15,650 as compensation for petitioner taking appellants' property for highway purposes.

The trial court refused to confirm the award and appellants "urge" this Court to "find that the lower court committed error in refusing to confirm the award and that his order be reversed, with an order confirming the award."

Appellants' property, consisting of approximately 20 acres, is located south of Cadillac, Michigan, and extends 660 feet north and south and 1,320 feet east and west.

For highway purposes and in furtherance of the Grand Rapids-Petoskey project, the State is taking approximately 1.3 acres by taking 87 feet of the 660 feet north and south boundary line on the east side of the property.

Old US–131 runs along the westerly line of the property and cuts across the northwest corner. The relocated new US–131 swings the highway east of the property.

There was constructed on this property a residence near the northwest corner, a 7-unit motel of which 3 units were not quite complete, together with 2 old buildings which were to have been converted into 2 more motel units near the southwest corner. There is a new dwelling house near the northeast corner, of good construction and modern in all respects, and sometimes rented as a motel unit.

Two expert witnesses testified for the owners, one placing a $73,100 before value and a $48,100 after value, and the other a $70,000 before value and a $43,000 after value. Both of these witnesses took into account the fact that the motel was situated on a main, well-traveled tourist highway, with a high business potential and, also, that there would be meager business prospects after traffic diversion to the new road.

· The State's expert witness testified to a $62,000 before value and a $61,900 after value, and did not consider diversion of traffic as a compensable item.

The trial court refused to confirm the $15,650 award, stating that the commissioners had largely based their award on a business potential loss due to a diversion of traffic and stating that as this was improper the recovery must be limited to the value of the land taken.

Appellants and appellee do not dispute that the law is well established to the effect that a motel owner cannot claim damages caused by a diversion of traffic, having no property or vested right in the traffic which flows over the highway, and that when a property owner improves property fronting on a highway he takes a calculated risk that the authorities may find it necessary in improving the highway system to build new facilities that will divert the traffic from passing in front of his property.

It is agreed by both appellants and appellee that the sole and novel question presented is: In computing the damage done to the owner of property abutting on a highway by the partial taking of his property in a condemnation proceeding, can the resultant diversion of traffic be considered as an element decreasing the value of his remaining property?

Appellee calls our attention to the States in which it has been held that the owner of property abutting on a highway is not entitled to damages for diversion of traffic where there has been a partial taking of his property.[1]

---

[1] *Morris* v. *State Highway Commission*, 240 Miss 783 (129 So 2d 367); *State, ex rel. Merritt,* v. *Linzell,* 163 Ohio St 97 (126 NE2d 53); *Johnson's Petition,* 344 Pa 5 (23 A2d 880); *Board of County Commissioners* v. *Slaughter,* 49 NM 141 (158 P2d 859); *State* v. *Peterson,* 134 Mont 52 (328 P2d 617); *Jahoda* v. *State Road Department* (Florida), 106 So 2d 870; *Winn* v. *United States* (CCA 9), 272 F2d 282; *Pennysavers Oil Co.* v. *State of Texas* (Tex Civ App), 334 SW 2d 546; *State, ex rel. Attorney General,* v *Carrow,* 57 Ariz 429 (114 P2d 891); *McHale* v. *State,* 278 App Div 886. (104 NYS2d 981).

Appellants counter by listing 6 cases from 3 States (Alabama, Nebraska, and Kansas) holding that if there is a partial taking the owner is entitled to damages for diversion of traffic.[2]

Appellee endeavors to discount the weight of the Alabama and Nebraska cases by pointing out that the eminent domain clause of our 1908 Constitution (art 13, § 1) provides: "Private property shall not be taken by the public  *  *  *  without  *  *  * just compensation therefor being first made or secured in such manner as shall be prescribed by law," whereas the Alabama constitution[3] adds after the word "taken" the words "injured, or destroyed," and the Nebraska constitution[4] reads in this regard "shall be taken or damaged."

Throughout the years this State has adhered to the principle that "taking" must be given a broad construction and not a construction in a narrow sense, and in *Pearsall* v. *Board of Supervisors of Eaton County*, 74 Mich 558, 561, 562 (4 LRA 193), this Court held:

" 'The constitutional provision is adopted for the protection of and security to the rights of the individual as against the government,' and the term 'taking' should not be used in an unreasonable or narrow sense. It should not be limited to the absolute conversion of property, and applied to land only; but it should include cases where the value is destroyed by the action of the government, or serious injury is inflicted to the property itself, or exclusion of the owner from its enjoyment, or from any of the appurtenances thereto. In either of these

---

2 *Gillespie* v. *City of South Omaha*, 79 Neb 441 (112 NW 582); *James Poultry Co.* v. *City of Nebraska City*, 135 Neb 787 (284 NW 273); *McRea* v. *Marion County*, 222 Ala 511 (133 So 278); *Phillips Petroleum Co.* v. *City of Omaha*, 171 Neb 457 (106 NW2d 727, 85 ALR2d 570); *Pike County* v. *Whittington*, 263 Ala 47 (81 So 2d 288); *Riddle* v. *State Highway Commission*, 184 Kan 603 (339 P2d 301).

3 Ala Const (1901), art 12, § 235.—REPORTER.

4 Neb Const (1875), art 1, § 21.—REPORTER.

cases it is a taking within the meaning of the provision of the Constitution.  *  *  *

"'A partial destruction or diminution in value is a taking.'    (Citing authorities.)

"If the public take any action which becomes necessary to subserve public use, and valuable rights of an individual are thereby interfered with, and damaged or destroyed, he is entitled to the compensation which the Constitution gives therefor, and such damage or destruction must be regarded as a 'taking.'"

In *In re Slum Clearance,* 332 Mich 485, 492, we stated:

"'The Constitution expressly forbids any appropriation of private property without "just compensation." There is no power in the legislature to create any exception to this rule, and nothing is just compensation which does not make good all the pecuniary loss or outlay occasioned to the owner by the appropriation of his property.'"

We also quote from *In re John C. Lodge Highway,* 340 Mich 254, 262, wherein we reiterated:

"'"Nothing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred." *In re Widening of Bagley Avenue,* 248 Mich 1, 5.'"

The facts presented in this appeal are unusual, and that is probably the reason why similar facts in condemnation proceedings *in re* the construction of highways have not previously been before this Court.

Appellants state: "In *Riddle* v. *State Highway Commission* (1959), 184 Kan 603 (339 P2d 301) we have a case almost exactly in point on the facts, and exactly in point as to law."

In the *Riddle Case* there was a taking from the owners of a motel a parcel of property for the construction of a limited access highway, resulting in a diversion of traffic to the rear of their property so that the motel could not be seen except for the top of the roof, although the old road remained unchanged and the motel could still be reached by going 600 feet to the east or at a crossover 1–1/2 miles to the west. The State originally estimated damages at $16,629, but later instructed its appraisers to omit damages for denial of access to the new highway and loss of business or profits to the motel in their appraisal for the reason that those items were not compensable in condemnation proceedings, and so the original award was reduced by approximately $9,000. The owner claimed loss of business potential reduced the value of the property $20,500, whereas his witnesses testified to a reduction in value from $25,000 to $26,500.

The supreme court sustained a jury's award of $23,887. In so sustaining, the court stated (pp 613, 614):

"Again, emphasizing that the lack of access to the new highway cannot be considered as a factor, because that right was nonexistent, nevertheless, the market value of the land remaining may be affected by the nature and extent of the taking, which might affect the reasonable probable uses to which the remaining land may be put, and that fact was a proper element for the jury to consider in determining damages to the land remaining."

In this case, the concurring opinion of Mr. Justice Schroeder commented as follows (p 641):

"It would further be fallacious to reason that because in a consequential damage case, where no property is taken from a landowner, there can be no recovery of damages for diversion of traffic, that this

factor should be eliminated as an element in the determination of damages in a condemnation action where there is a direct invasion of the landowner's property."

The question presented to this Court is: Shall we abandon the liberal principles that we have consistently adopted in the past in regard to the "before and after" rule under facts such as are presented in this appeal?

Our answer to that question is that we will not, and will follow those States, even though they are in the minority, holding that other factors, such as are present in this appeal, which result in diminution in value of the land remaining after the partial taking may be considered in arriving at the compensation to be awarded.

The commissioners in making their award properly took this principle into consideration. There is no complaint about the action of the commissioners in any other respect, and their award was between the high and low estimates as to the amount of damages sustained by appellants.

We conclude that the partial taking in the instant case justified the commissioners in considering all circumstances which resulted in the diminution of the land remaining and, therefore, we remand this case for the purpose of the entry of an order confirming the award.

During the oral argument a dispute arose between appellants and appellee in regard to a further consideration of damages that might be caused at some time in the future by the creation of a cul-de-sac on the west side of appellants' property. Briefs were submitted, after argument, on this question. This question would have been material if the decision of this Court had confirmed the trial court's refusal to confirm, but inasmuch as the prayer of the ap-

pellants has been granted no further discussion is necessary in regard to a possible future cul-de-sac in this appeal.

The order of the circuit court should be reversed and the cause remanded for further proceedings. Costs to appellants.

Dethmers and Souris, JJ., concurred with Kelly, J.

Kavanagh, C. J. The facts in this case are set forth in Justice Kelly's opinion. The controlling issue is whether the diversion of traffic is an element of damages in condemnation proceedings involving the partial taking of a parcel of property abutting a highway.

As appellants are shown to claim, the supreme court of Kansas was faced in *Riddle* v. *State Highway Commission,* 184 Kan 603 (339 P2d 301), with a case very similar factually to that presently before us. In arriving at the ruling approvingly quoted in my Brother's opinion, the majority opinion of the Kansas court made this pivotal determination (p 616):

"Thus, the diversion of the major portion of the traffic is not an element of damage to be considered by the jury in determining damage to the land remaining. However, the diversion of the flow of traffic from in front of plaintiffs' place of business to the new highway constructed upon the high grade at its rear from which plaintiffs' premises had no direct access, is a circumstance of which the jury should be informed and the question whether such fact results in damage to the land remaining was properly left to their ultimate decision (citing cases)."

The dissenting opinion in the *Riddle Case* analyzed this statement accurately as nothing more than legal doubletalk (p 617):

"The effect of the majority opinion is that although the principal elements of damage involved in this appeal (lack of or denial of access to the new highway; loss of business or loss of profits, and diversion of traffic from the old to the new highway) *are not compensable,* nevertheless, because plaintiffs are abutting owners without direct access, *such elements may be considered* and are a circumstance that enters into the question of the amount of damage to the land remaining of which the jury should be informed and the question left to their ultimate decision. Thus, plaintiffs are permitted to recover indirectly that which they cannot recover directly. In other words, the majority opinion denies, but at the same time permits, these damages. This holding in effect makes the State an insurer of a continued flow of traffic upon the highway past the plaintiffs' door, and, if in the interest of public safety and welfare, the highway is relocated and traffic diverted to a controlled access facility, a guarantor for all business losses suffered by plaintiffs as a result of the commission's lawful action. It has never been so."

The same dissenters then indicated the majority rule in the United States is contrary and demonstrated the soundness of the latter by a persuasive discussion (pp 618–620):

"Plaintiffs' motel and home were not disturbed in any respect by the condemnation except a portion of the back yard was taken. The motel faces the same highway it always faced; it has the same access it always had, and its patrons have the same approach from all directions they always had. The only difference is that traffic which formerly went in front of the motel will pass at the rear over the new highway, which, due to its controlled access facility, denies plaintiffs and their patrons direct access. Traffic is the lifeblood—the stock and trade, of a motel. Without it, it becomes like a melon severed from its vine—it withers and dies. But, old

US Highway 24 was established for the benefit of the traveling public, and only incidentally for the benefit of plaintiffs and others who engaged in business along its way. Those businesses were established with the knowledge that new highways might be constructed which would largely divert the flow of traffic from past their door. This was a risk they assumed when they established their business.

"My colleagues agree it is universally held that had there been no taking of a portion of plaintiffs' property the elements of damage they now claim would not be compensable. In other words, where a direct taking of some of a landowners' property is not involved, he cannot recover consequential damages for the relocation of the highway entirely off his property. Hence, had the new highway been relocated along the north line of plaintiffs' property or north of that point, no damage could be allowed. However, the majority opinion justifies the items of damage upon the ground that since a part of plaintiffs' property was appropriated for the right-of-way, no matter how small, they immediately become entitled to have these items of consequential damage presented to the jury in determining diminution in value of the land remaining. The holding is necessarily that even though other property owners along the old highway are injured in exactly the same manner as plaintiffs, the fact that their property was not needed for the new right-of-way prevents them from recovering damages they may all suffer. The conclusion is unsound, and the majority rule in the United States does not support it.

"While the owner of land is to be given by way of compensation the fair market value of the land taken plus the diminution in value of that remaining before and after the taking (*Hoy* v. *Kansas Turnpike Authority,* 184 Kan 70 [334 P2d 315]), courts generally, if not universally, recognize and approve an exception to this rule that there are elements of damage for which no compensation will be given even though such elements may cause diminution in

the value of the land remaining. The cases are nearly, if not entirely, unanimous in their holding that the owner or land abutting on a highway has no property or other vested right in the continuation of the flow of traffic which passes his door so long as he is not deprived of ingress and egress to the highway so as to be compensable in an eminent domain proceeding (citing cases). I know of no better statement of the rule than that of Mr. Justice Brewer in the early case of *Heller* v. *Atchison, T. & S. F. R. Co.,* 28 Kan 625, wherein he said (pp 628, 629):

" 'Where a party owns a lot which abuts on that portion of the street vacated so that access to the lot is shut off, it is clear that the lot-owner is directly injured, and may properly challenge the action. The closing up of access to the lot is the *direct* result of the vacating of the street, and he, by the loss of access to his lot, suffers an injury which is not common to the public; but in the case at bar, access to plaintiff's lots is in no manner interfered with. The full width of the street in front and on the side is free and undisturbed, and the only real complaint is, that by the vacating of the street away from her lots the course of travel is changed. But this is only an *indirect* result. There is nothing to prevent travel from coming by her lots if the travelers desire it. The way to the heart of the city by her lots is a little more remote than it was before, but still free passage is open to all who wish to pass thereby. No one is compelled to stay away. *Access to the lots is the same that it was before,* so that the injury is only the indirect result of the action complained of, and it is an injury which, if it exists at all, is sustained by all other lots along the street west of the parts vacated. Travel by those lots may be diminished, travel on streets south may be increased, and to that extent property on such southern streets may be benefited thereby. The same result would follow if some other avenue of approach to the city were specially improved. *Public travel*

*naturally seeks that which is the best route; but surely that thus the tendency of travel in front of her lots was diverted would give her no cause of action. The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities.'* (Emphasis supplied.)

"See, also, *Highbarger* v. *Milford,* 71 Kan 331 (80 P 633); *Foster* v. *City of Topeka,* 112 Kan 253, 255 (210 P 341); *Ruff* v. *Board of Com'rs of Shawnee County,* 127 Kan 188, 200, 201 (272 P 189); *Johnson's Petition,* 344 Pa 5 (23 A2d 880); *State, ex rel. Merritt,* v. *Linzell,* 163 Ohio St 97, 104 (126 NE2d 53); *State Highway Commission* v. *Humphreys* (Tex Civ App), 58 SW2d 144, 145. In the *Linzell Case, supra,* it was said (p 104):

" 'It is now an established doctrine in most jurisdictions that such an owner (abutting owner) has no right to the continuation or maintenance of the flow of traffic past his property. The diminution in the value of land occasioned by a public improvement that diverts the main flow of traffic from in front of one's premises is noncompensable. (Cases cited.) The change in traffic flow in such a case is the result of the exercise of the police power or the incidental result of a lawful act, and is not the taking or damaging of a property right. (Cases cited.)' "

Contrary to Justice Schroeder's concurring comment in the *Riddle Case,* quoted by my Brother, I find no fallacy in the proposition that injury caused by the diversion of traffic is compensable either to *all* abutting owners injured thereby *or* to *none* of them.

The possible cul-de-sac, which, if established, would lie approximately one mile from appellants' property, is claimed by appellants to be a proper element of damages in this case. Since the appellee has acquired the right to establish a permanent break

in the road, the appellants urge that the one-recovery rule of damages in condemnation cases[1] dictates that they be compensated in the present litigation for all injury possible to arise in the future from the appellee's present acquisition of rights.

However, the taking of the strip of appellants' land and the obtaining of the right to close off the road, while incidents of the same highway project, are separate acquisitions involving different types of rights, and are, therefore, not affected by the *Barnes Case,* which refers only to situations involving a single taking. It follows that in the present case, if the blocking of the highway were a taking of a *property* right of appellants, compensable damages would be a proper subject of litigation apart from these proceedings, which involve the taking of the strip of appellants' land.

The Fifth Amendment to the Federal Constitution and article 13 of the Michigan Constitution of 1908,[2] under which appellants here claim a remedy, proscribe the taking of *private property* without just compensation. Compensable injury arises under those provisions, therefore, only from a taking of *property rights.*

From a reading of the cases dealing with the problem, it is observed that the property-right injury to be found and redressed in cul-de-sac situations is the entire or material cutting-off of the access, of an abutting owner, to the general system of highways. As will be noted later, it is only on that basis that an abutting owner can properly make the necessary claim of special damage, *i.e.,* damage not incurred, in the same, greater or lesser degree, by the general public.

The general rule governing compensation in cases like that before us is stated in 2 Nichols on

---

[1] *Barnes* v. *Michigan Air Line Ry.,* 65 Mich 251.
[2] The presently applicable provision is Const 1963, art 10, § 2.

Eminent Domain (rev 3d ed, 1963), § 6.4443(3), p 582:

"It is held by perhaps the weight of authority in this country that when a portion of a street is obstructed or discontinued by authority of law, even if the constitution or statutes in force require that the owners of property damaged by such discontinuance or obstruction shall be compensated, the owner of land abutting upon such street, but not upon the portion obstructed or discontinued, is not entitled to compensation, if his land may still be reached from the other direction."

This Court has established the rule in Michigan, namely, that mere inconvenience caused by the necessity to use a more indirect route to travel in certain directions is not a deprivation of access and, hence, not compensable. In *Tomazewski* v. *Palmer Bee Co.,* 223 Mich 565, 569, 570, we said:

"The question of eminent domain is not involved. By no stretch of imagination can it be said that property rights of plaintiffs are taken. Mere inconvenience in having to go around the east half of the block next south, instead of through it, constitutes no taking of the property of plaintiffs. It is a well settled rule that a lot owner's right to object to the vacation of a part of a street depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lot is *entirely or materially cut off by reason of the vacation.* That he may be inconvenienced or that he may have to go a more roundabout way to reach certain points does not bring to him any injury different in kind from the general public but only in degree. If means of ingress and egress are not cut off or lessened in the block of the abutting owner but only rendered less convenient because of being less direct to other points in the city and made so by the vacation of the street in another block such con-

sequence is *damnum absque injuria. Buhl v. Fort Street Union Depot Co.,* 98 Mich 596 (23 LRA 392)."

In *Buhl, supra,* we said (pp 604, 607):

"A distinction may well be held to exist between the injury which results to an abutting owner, or another so situated that the means of ingress and egress to and from his premises are cut off by a discontinuance of a street, and one owning land upon another street, or on the same street at a distance from the part of the highway discontinued.    *    *    *

"We think the weight of authority in this country fully sustains the contention of defendant that such an injury as that resulting to the plaintiff here is one which he suffers in common with the general public, and *damnum absque injuria.*"

In a recent case involving a statutorily required notice to owners adjoining a road to be discontinued,[3] this Court reaffirmed the early case of *Kimball* v. *Homan,* 74 Mich 699, wherein it was said (p 703):

"It is evident that in view of the statutes the persons who may complain of the discontinuance of a way must be such as are directly affected in their convenience of access to their property, and who are liable to lose their immediate means of communication."

The effect of these decisions is that such an act as the creation of a cul-de-sac in the instant case is not a taking and, therefore, noncompensable, since no property right is being violated. A violation of a property right of appellants would be occasioned partly by this cul-de-sac if, at a later date, appellants would be deprived of their right of access to the general system of highways by a combination of the cul-de-sac potentiality and the acquisition by the State of the right to close old US–131 between

---

[3] *Hagerl* v. *Cheboygan County Road Comm.,* 363 Mich 402.

appellants' property and the next crossroad to the north and of appellants' right of access from the eastern end of their property to Forty-three Mile road (so-called "Old Stone Ledge road"). The evidence disclosed that the State had acquired no such rights at the time of trial.[4] Without such additional factors, the cul-de-sac would merely be an interference with the general public right of travel, common to all the people of this State, particularly those who might operate a similar motel and business on the opposite side of the present highway from appellants' property. It is a mere incident which can hardly be looked upon as a vested right of property, which it would not be competent for the legislature to take without compensation.

This doctrine has long been recognized, as evidenced by the following statement in an old treatise in this field, 1 Lewis on Eminent Domain (3d ed, 1909), § 205, pp 386, 387:

"But where the plaintiff does not abut upon the vacated part of the highway and is not cut off from access to a public highway, it is generally held that he cannot recover, though he may have to go further to reach certain points and this may affect the value of his farm."

Lewis cited several cases in support of that proposition, one of which was *People, ex rel. Bristol,* v. *Supervisors of Ingham County,* 20 Mich 95. That early case said (p 102):

"The parties who seek to reverse the action of the board are not the owners of the land through which the discontinued portion of the road passes. They show no rights affected, but such as are common to all other owners of property anywhere along

---

[4] The State *had* acquired, by contrast, *limited access* right-of-way along Forty-three Mile road to within 100 feet of the southern boundary of appellants' property.

the line of those portions of the road not discontinued; if, in fact, they show anything more than the mere right of travel, common to all the people of the State. The whole burden of their complaint is that they are deprived of a direct road to the city of Lansing, and as far as we can judge from the case, will be compelled to travel from a quarter to half a mile further in going to and returning from that place. They complain of this, it is true, as depreciating the value of their property. But this, if there be any such damage, being a mere incident arising from the interference with the general public right of travel, common to all the people of this State, can hardly be looked upon as a vested right of property, which it would not be competent for the legislature to take without compensation."

Since we find the right of travel is not a vested property right, it is not a proper element of damages.

The order of the circuit court setting aside the commission determination and impaneling new commissioners is affirmed. No costs are awarded, since a public question is involved.

Smith, J., concurred with Kavanagh, C. J.

Black, J., concurred in result.

O'Hara, J. (concurring). I am constrained to agree with the Chief Justice in his statement that:

"The controlling issue is whether the diversion of traffic is an element of damages in condemnation proceedings."

Despite my esteemed colleague's* able and heroic efforts to apply the "before and after" value rule to this case, an award of $15,650 for the 1.3 acres of

---
* Justice Kelly.—Reporter.

land here involved is infirm.  Either diversion of traffic was considered an element of damage, or the amount is so fantastically unrealistic as to mandate its vacation in any event.

I concur with the Chief Justice.

ADAMS, J., took no part in the decision of this case.