515 P.2d 593

STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellant,

v.

Enos P. SCHAFFER, as his sole and separate property, et al., Appellees.

ARIZONA LAND TITLE AND TRUST COMPANY, an Arizona corporation, as Trustee under Trust No. 5049–T; and R. S. Lewis and Mary M. Lewis, his wife, Cross-Appellants,

v.

STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Cross-Appellee.

No. 11197.

Supreme Court of Arizona, In Banc.

Oct. 22, 1973.

Gary K. Nelson, Atty. Gen., Phoenix, by William C. Kimble, Sp. Asst. Atty. Gen., Tucson, for appellant and cross-appellee.

Robert C. Stubbs, and James C. Stephens, Tucson, for appellees and cross-appellants.

HOLOHAN, Justice.

This appeal and cross-appeal arises out of the retrial of certain condemnation actions which had been remanded to the superior court for retrial after the decision of this Court in State ex rel. Herman v. Schaffer, 105 Ariz. 478, 467 P.2d 66 (1970).

The matter was returned to the court below and proceeded to retrial in three segments. All the defendants were awarded damages in amounts varying from $4,700 to $120,000. An appeal by the State was taken from the verdicts, judgments and orders denying its motions. A cross-appeal was taken by defendants Arizona Land Title and Trust Company and R. S. Lewis and Mary M. Lewis.

This Court granted a petition for transfer of the appeal from the Court of Appeals because a resolution of this matter rests upon an interpretation of our prior decision.

The eminent domain action was against seventeen parcels of land located along Interstate Highway 10, formerly known as U.S. 80, in an area northwest of Tucson

called Jaynes Station. The facts concerning the location of the property before the taking and after were previously set forth in *Schaffer*:

"All of the properties abutted both sides of the highway along a one-and-one-quarter-mile strip between Sunset Road and Ruthrauff Road. Prior to its conversion to a limited-access highway, U.S. 80 was a divided road with certain designated crossovers. Along the one-and-one-quarter-mile strip in question there were seven such crossovers put in by the State in accordance with an agreement with the property owners, made at the time the State acquired the right of way. Thus all of the properties had direct access to both the northbound and southbound lanes of traffic.

"Interstate 10 was constructed entirely within the existing right of way so that it was not necessary to take any land. However, the crossovers were eliminated, and a fence was constructed along the sides of the highway, thereby eliminating the property owners' direct access to the mainstream of traffic. But the State constructed two-way frontage roads on either side of the highway, on which roads all of the properties abutted. The ramps connecting to the frontage roads were located about a half mile to the north and south of the subject properties." State ex rel. Herman v. Schaffer, *supra*, at 105 Ariz. 479, 467 P.2d at 67.

The appellant has raised six questions on appeal which may be refined to four issues. First, was there a contract with all the parcel owners? Second, to what damages, if any, were the landowners entitled? Third, did the trial court err in the admission of certain evidence? Fourth, did the evidence justify the amounts given in the verdicts and judgments?

The cross-appellants present one question: Did the trial court commit reversible error in instructing the jury on the issue of "good faith" improvements on the land to be taken.

The State contends that its motion for summary judgment should have been granted because the issue of contract damages had been fully litigated in the first trial and the issue decided; therefore the issue should not have been retried. This contention is based on the erroneous conclusion that this Court reversed the first cases solely because the trial court would have allowed damages for loss of direct access.

In *Schaffer* the Court held that the owners of land abutting a highway have a right of access to the public road system, but that access need not be direct access. If reasonable access to the highway is provided to the abutting landowner, he is not entitled to compensation. This Court found from the evidence that the frontage road provided by the State for the landowners provided reasonable access to the highway; therefore the limitation of access was not compensable. This holding was based on the principles of law governing a limitation of access under the police power of the state. The Court pointed out that an additional matter was involved in the case: "However, a contractual element is injected into this case." and as to this additional element the Court stated its holding:

"We therefore hold that, as a matter of law, the State breached its agreement and the measure of damages, if any, should be computed, in accordance with the rule we have set forth herein, at the time that the breach occurred." Schaffer, *supra*, 105 Ariz. at 486–487, 467 P.2d at 74–75.

By the agreement the landowners were entitled to direct access to the highway in both northbound and southbound lanes. This direct access was a matter controlled by contract, and it was a matter quite distinct from limiting access under the police power. By reversing the judgments of the superior court and remanding the cases for further proceedings consistent with the decision, it should be apparent that the cases were returned to the trial court for retrial

on the damage issue arising out of the breach of the agreement by the State. The trial court correctly denied the State's motion for summary judgment.

The agreement between the State and the original landowners created an easement appurtenant to the land which right runs with the land. Solana Land Co. v. Murphey, 69 Ariz. 117, 210 P.2d 593 (1949). Thus any subsequent owners and lessees are entitled to the rights incident to the easement and damages for its loss.

The State complains that, although several of the owners had agreements with the State for the original taking of land in 1950, there were others who refused to sell at that time, and the State was required to obtain the original right-of-way by condemnation proceedings. As to these owners, the State contends that there was never any contract and they should not be allowed to receive damages on the basis that the State breached an agreement.

The evidence discloses that the State had express agreements with some landowners, but it brought actions in condemnation against others. In the decision on the first appeal, this Court made no distinction between any of the defendants. We said that "as a matter of law, the State breached its agreement." Nothing was said that limited the breach to some owners and not all; therefore, the "law of the case" is that there were agreements with all the owners. Whether this was an erroneous conclusion is of no moment now. This State has followed the policy that at some time litigation must end so the parties can rely on a final decision. In re Monaghan's Estate, 71 Ariz. 334, 227 P.2d 227 (1951). (See discussion in McGovern v. Kraus, 200 Wis. 64, 227 N.W. 300, 67 A.L.R. 1381.) Although we do not look upon the rule of the case doctrine with favor, it is the one we have chosen to follow. In re Monaghan's Estate, *supra*, discusses the meaning of the rule:

"What is meant by the phrase 'law of the case?' The court first discussed it in Snyder v. Pima County, 6 Ariz. 41, 53 P. 6, in the following language: '* * * Even though we should now be convinced that this court had made a mistake in its former judgment, directing the district court to overrule the demurrer and proceed to trial, yet that judgment is the law in this case. Its construction is more than *stare decisis*. It becomes *res adjudicata*. While this court may reserve to itself the right to reverse that decision as it may be applied to another case, yet it is well settled that a judgment of an appellate court in a case becomes the law of that particular case, and is not subject to review thereafter on second appeal. (Citing cases.) * * *'

"The same rule is stated in Commercial Credit Co. v. Street, 37 Ariz. 204, 291 P. 1003, 1004, quoting 4 C.J., Sec. 3075, p. 1093: 'It is a rule of general application that the decision of an appellate court in a case is the law of that case on the points presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts, and no question necessarily involved and decided on that appeal will be considered on a second appeal or writ of error in the same case, provided the facts and issues are substantially the same as those on which the first decision rested, and, according to some authorities, provided the decision is on the merits. This doctrine is not one whose extension is looked upon with favor, and it is adhered to in the single case in which it arises and is not carried into other cases as a precedent.' See also, 5 C.J.S. Appeal and Error § 1821." 71 Ariz. 335–336, 227 P.2d 228.

The trial court correctly treated the decision of this Court as applying to all the defendant landowners, and the court did not err in submitting the case to the jury on the breach of agreement as to all of the defendants.

The State challenges the admission into evidence of a letter by Ben E. Stanton, Chief Right of Way Agent for the High-

way Department, to J. R. Van Horn, the State Highway Engineer, dated December 19, 1962. The State contends that its only purpose was to prejudice the jury. The State points out the objectionable parts of the letter as:

"We have been advised through various sources that the construction of this frontage road will result in numerous inverse condemnation suits based on the Thelberg decision that the access rights of the abutting properties have been impaired and are entitled to compensation.

"It is our contention that the access to the property will not be impaired, but will actually be improved. There is no doubt, however, that the proposed construction will make it more circuitous for the vehicles on the interstate highway to enter these commercial properties. In other words, we believe that any loss in value which occurs will be because of divergence of traffic which is a noncompensable item of damage rather than the impairment of access as will be claimed in the suits.

" . . . .

"In discussing these cases with Mr. John Amey, it is our belief that one of the most difficult problems we will have to encounter in the trial of these suits is the fact that we will be exercising certain police powers during the construction, as well as changing the means of access to the commercial properties.

"At the present time there exists between the two divided pavements several median crossovers which permit both north- and south-bound traffic to turn into these commercial properties. The elimination of these crossovers during the construction of the highway and subsequent trial of the inverse condemnation suits will provide the landowners with additional ammunition with which to pursuade [sic] a jury of their damages." (Exhibit E)

■ The defendants contend that the letter is an admission against interest of a party by its agent. The letter was clearly a communication between two agents of the State. It was not intended for public use. We have previously held such communications are not admissible as admissions of a party by an agent. Arizona State Highway Department v. Bechtold, 105 Ariz. 125, 460 P.2d 179 (1969); Restatement (Second) of Agency § 287.

■ Was the admission of the letter prejudicial error? The letter describes the nature of the highway before the construction; it confirms that the crossovers permitted both northbound and southbound traffic to turn into the properties; it notes that the crossovers will be eliminated; and it admits that access will no longer be direct but circuitous. All these matters were not contested by the State. The author of the letter feels that access to the property will be improved, but he does imply that the commercial properties may be damaged by lack of direct access. Considered with all the evidence presented, we do not feel that the admission of the letter constituted prejudicial error.

■ The State's last contention is that the evidence did not justify the verdicts and judgment. The scope of the review of evidence by this Court is narrow. When sufficiency of the evidence is questioned on appeal, we will examine the record only to determine if there is substantial evidence below to support the judgment. Jackson v. Clintsman, 91 Ariz. 314, 372 P. 2d 204 (1962). The State's principal point on this issue is that the trial court allowed an improper method of computing damages to be submitted to the jury. We disagree. In *Schaffer* this Court found a breach of the agreement to maintain the crossovers, and the measure of damages was the difference in market value of the land in the before situation, with access by crossovers, and in the after condition without the access by crossovers. See also State v. Tucson Title Insurance Company, 101 Ariz. 415, 420 P.2d 286 (1966). Our review of the evidence satisfies us that the trial court submitted the case to the jury on the proper basis, and there is substantial evidence

to support the verdicts and judgments by the court.

The cross-appeal by property owners Arizona Land Title and Trust Company, as trustee, and R. S. Lewis and Mary M. Lewis challenges the trial court's giving of the State's Instruction No. 26 and failure to give the Owners' Instructions Nos. 29 and 30.

At trial, Lewis stated he and a Mr. Bly had bought the property for commercial use, but had not begun development until 1963 because the property was not yet ripe for those purposes. With prior knowledge that the State was to put his property and others on frontage roads, Mr. Lewis joined with several property owners in seeking an injunction to prevent the State from closing the crossovers. This took place in January 1963.

Even with this knowledge, Lewis believed it would be profitable to build a gas station and therefore entered into a contract with a Mr. Tiller to construct the gas station. The lease provided that Tiller would construct the improvements and after three years all the property except personalty would belong to Lewis and Bly. Thereafter Tiller would rent.

On September 19, 1963, the crossovers were closed and Tiller halted construction with the improvements 80% complete. After September 19, 1963, an option contract was entered into whereby Tiller, in exercising the option, could buy the land and improvements. Tiller failed to exercise the option. In order to avoid losing both land and improvements Lewis and Bly paid off the Tiller creditors and finished the improvements. The total cost of the improvements was approximately $100,000. The land in the after situation was considered with the improvements 80% complete.

It is the defendants' contention that the action at the trial level is one of eminent domain while the plaintiff feels that it is one of contract. The propriety of the instructions hinges on this point. For if it is an action in eminent domain, the property owners' knowledge of the proposed impending end to direct access and destruction of the crossovers would be insufficient to show a bad-faith act in erecting improvements on the land. Showalter v. State of Arizona, 48 Ariz. 523, 63 P.2d 189 (1936). While the State contends that this action was in contract and therefore the doctrine of avoidable consequences would apply to mitigate damages. Coury Brothers Ranches v. Ellsworth, 103 Ariz. 515, 446 P.2d 458 (1968).

As alluded to before, this action involves a contract but the breach of the contract actually involves the taking of a property right which makes the action one in eminent domain.

In State v. Tucson Title Insurance Company, *supra*, the Court quoted with approval from Williams v. North Carolina State Highway Comm., 252 N.C. 772, 114 S.E.2d 782 (1960):

"Plaintiffs in their brief concede that the remedy for the taking of an easement is a special proceeding in condemnation. However they argue that they had no property right which could be taken here, but that they had a contractual right which was not subject to condemnation. A similar point was argued in Long Island Water-Supply Co. v. City of Brooklyn, 166 U.S. 685, 17 S.Ct. 718, 720, 41 L.Ed. 1165, where plaintiff had a twenty-five year contract with the city to supply it water and the city acquired plaintiff's water supply system by condemnation. *In response to the argument that the taking was improper because it interfered with a contract right the court said 'it (the argument) ignores the fact that the contract is a mere incident to the tangible property; that it is the latter which, being fitted for public use, is condemned* \* \* \* *it still is true that the contract is not the thing which is sought to be condemned, and its impairment, if impairment there be, is a mere consequence of the appropriation of the tangible property.' The fact that plaintiffs' right of access arose out of an agreement and a deed does not prevent*

98

*its being a property right. Indeed, defendant's right-of-way was created by agreement, but it is nonetheless a property right.*" 114 S.E.2d at 785. (Emphasis added.)

 The present action being one in eminent domain, did the actions of defendants show bad faith when they constructed the improvements? Knowledge that a public improvement is proposed which will result in the taking of land does not deprive an owner from recovering the value of improvements subsequently made. Showalter v. State of Arizona, *supra*. Until such time as the summons and complaint are issued the landowner's freedom of use of his land is in no way infringed upon or restricted even by the passage of a resolution by the State to condemn. State ex rel. Willey v. Griggs, 89 Ariz. 70, 358 P.2d 174 (1960); State ex rel. Herman v. Larriva's Ace Electric Co., 11 Ariz.App. 452, 465 P.2d 589 (1970). However, the landowner may not recover the value of improvements placed on the land after knowledge of the impending condemnation when the improvements are placed on the land in bad faith. In re Briggs Ave., 196 N.Y. 255, 89 N.E. 814 (1909), Eminent Domain, 27 Am.Jur.2d, § 294. "Bad faith" improvements are those which are not made in the natural, ordinary, and legitimate use of real property, but are made for the sole purpose of enhancing the damages to be recovered in an eminent domain action. In re Briggs Ave., *supra*.

 The evidence as to cross-appellants does not support a finding of bad faith in making the improvements to the real property in question. Cross-appellants were entitled to make the contemplated improvements even if the State was planning to eliminate direct access to the highway. Beyond knowledge of the proposed changes in the highway, the State failed to show that the improvements constructed on the land were not an ordinary and legitimate use of the land. Without such proof the issue of bad faith should not have been submitted to the jury. The giving of the State's proposed Instruction No. 26 was error.

The judgments of the trial court as to all defendants, except the cross-appellants, are affirmed. As to the cross-appellants, the judgment of the superior court is reversed and the matter remanded for further proceedings consistent with this decision.

Affirmed in part; reversed in part.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.