BIFF'S GRILLS, INC. v STATE HIGHWAY COMMISSION

1. EMINENT DOMAIN—PRIVATE LANDOWNER—CAUSE OF ACTION—
   SAFETY IMPROVEMENTS IN RIGHT OF WAY.

   A private landowner does not have a cause of action against the
   government as a result of safety improvements within an
   existing right of way where the improvements make it more
   difficult for some customers to reach the landowner's commer-
   cial establishment.

2. EMINENT DOMAIN—INVERSE CONDEMNATION—EASEMENT OF ACCESS.

   Michigan recognizes the theory of inverse condemnation as a
   means of enforcing the constitutional ban on the uncompen-
   sated taking of property, but the courts have actually awarded
   damages based on the inverse condemnation of the easement of
   access to a piece of property only where all existing routes of
   access to the property have been effectively blocked.

3. EMINENT DOMAIN—COURT OF CLAIMS—JURISDICTION—INVERSE CON-
   DEMNATION.

   The Court of Claims is the proper forum in which to seek relief
   where a plaintiff alleges an already accomplished inverse con-
   demnation by the State of Michigan.

4. ACTION—MANDAMUS—STATE OFFICIALS—COURT OF APPEALS—
   COURT RULES.

   Mandamus against state officials must be sought in the Court of
   Appeals (GCR 1963, 714.1[1]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur 2d, Eminent Domain §§ 29, 41, 42.
[2] 26 Am Jur 2d, Eminent Domain §§ 157–173, 175.
   27 Am Jur 2d, Eminent Domain §§ 279, 478–507.
[3] 26 Am Jur 2d, Eminent Domain §§ 478–507.
[4] 52 Am Jur 2d, Mandamus § 166 *et seq.*
[5] 73 Am Jur 2d, Summary Judgment § 29.
[6] 26 Am Jur 2d, Eminent Domain §§ 205, 242.
   27 Am Jur 2d, Eminent Domain §§ 328, 447, 472.
[7] 26 Am Jur 2d, Eminent Domain §§ 205, 242.

5. JUDGMENT—SUMMARY JUDGMENT—AMENDMENT OF PLEADINGS—JUDGMENT ORDERS.

The correctness of an initial summary judgment opinion does not necessarily foreclose the amendment of the pleadings, especially where the opinion has not yet been implemented by a judgment order.

6. EMINENT DOMAIN—INCREASED COMPENSATION—TRAFFIC FLOW.

Present law does not permit an increase in eminent domain compensation because traffic flow past the remainder of a parcel of land will be diminished or diverted.

7. EMINENT DOMAIN—BUSINESS—TRAFFIC FLOW—BLOCKED ROUTES OF ACCESS.

Case precedent from Michigan and other jurisdictions supports the refusal to recognize a taking by eminent domain where a business is harmed by a diversion of traffic that does not effectively block all existing routes of access to the property.

Appeal from the Court of Claims, James L. Kallman, J. Submitted March 9, 1977, at Lansing. (Docket No. 28483.) Decided April 19, 1977. Leave to appeal applied for.

Complaint by Biff's Grills, Inc., against the Michigan State Highway Commission for damages sustained as a result of an inverse condemnation of property, or, in the alternative, to compel the commission to proceed with condemnation of the property. Dismissed. Plaintiff appeals. Affirmed.

*Alan T. Ackerman,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Janis Meija,* Assistants Attorney General, for defendant.

Before: D. F. WALSH, P. J., and ALLEN and N. J. KAUFMAN, JJ.

ALLEN, J. Plaintiff alleges that its thriving restaurant business at the intersection of Orchard

Lake Road and I-696 was effectively destroyed in 1973, when a median strip was installed in Orchard Lake Road. The median prevents northbound traffic from turning left into the plaintiff's establishment which is located on the west side of Orchard Lake Road, just north of I-696. The Court of Claims trial judge announced that he would grant a hybrid accelerated/summary judgment for the defendant after concluding that the plaintiff had failed to state a claim (1) upon which relief could be granted against the state; (2) which was within the subject matter jurisdiction of the Court of Claims. GCR 1963, 116.1(2), 117.2(1). After a last minute motion to amend the complaint was denied, the judge dismissed the action pursuant to his earlier opinion. The plaintiff appeals from the dismissal and the denial of its motion to amend.

The first issue on appeal is whether a private landowner[1] has a cause of action against the government as the result of safety improvements within the existing right of way where the improvements make it more difficult for some customers to reach the landowner's commercial establishment. We conclude that, under existing Michigan precedent, no cause of action was stated in the present case.

Plaintiff's theory is that construction of the median resulted in a constructive taking or inverse condemnation of its easement of access to its property. Michigan recognizes the theory of inverse condemnation as a means of enforcing the

---

[1] Plaintiff actually leased the restaurant from an entity which is not a party to this action. That fact alone does not preclude a recovery, but it would make a determination of damages much more difficult. The parties have not addressed this problem. In *HCB Investments v State Highway Commissioner* (Docket No. 31164) [held in abeyance pending the outcome of this appeal], the owner of this property is appealing from the Court of Claims dismissal of its own action against the defendant.

constitutional ban on uncompensated takings of property. Const 1963, art 10, § 2, *Thom v State Highway Commissioner,* 376 Mich 608; 138 NW2d 322 (1965), *Hill v State Highway Commission,* 382 Mich 398; 170 NW2d 18 (1969). But only when all existing routes of access have been effectively blocked have the courts actually awarded damages. *Thom, supra.*

The great majority of cases deny recovery. They either ignore the concept of inverse condemnation or pay lip service to it but find it inapplicable. The most common technique is to hold that a private owner has no property interest in the continuance of traffic patterns (so long as ingress and egress routes remain). *State Highway Commissioner v Watt,* 374 Mich 300; 132 NW2d 113 (1965). Another frequent statement is that no taking of property occurs when access to property is merely made "inconvenient" as opposed to being completely blocked. *Houghs v State Highway Commissioner,* 1 Mich App 554; 137 NW2d 289 (1965). The plaintiff's restaurant remains directly accessible from the southbound lanes of Orchard Lake Road. Access to or from the northbound lanes is indirect and difficult—but not impossible. Given the authorities, we are forced to conclude that the plaintiff has suffered an inconvenience, not an unconstitutional taking.

The cases[2] and rationale underlying the controlling precedents have been attacked in Carroll, *Compensability for Impairment of Abutting Owner's Easement of Access: A Century of Michigan Supreme Court Analysis,* 52 J Urban L 505 (1974). Carroll argues that Justice SOURIS' opinion in *Thom v State Highway Commissioner, supra,*

---

[2] Especially *Pontiac v Carter,* 32 Mich 164 (1875), which is frequently cited in support of rulings denying compensation when no tangible real property has been taken.

should be read as overruling *Pontiac v Carter,* 32 Mich 164 (1875). (See fn 2.)

While that was Justice SOURIS' intent, he was joined by only two of the other seven members of the Court.[3] Justice SOURIS later acknowledged that *Thom* has not overruled *Carter. Autio v Proksch Construction Co,* 377 Mich 517, 537, fn 15; 141 NW2d 81 (1966). And, one year after *Thom,* the Court made the following statement in *State Highway Commissioner v Gulf Oil Corp,* 377 Mich 309, 315; 140 NW2d 500 (1966):

"In *[State Highway Commissioner v Watt,* 374 Mich 300, 307], this Court held that diversion of traffic is not an element of damages in condemnation proceedings. The reasoning of the majority opinion in that case is persuasive here."

We conclude that we have no choice but to hold that the plaintiff's original complaint failed to state a claim upon which relief could be granted. We now must examine the other issues raised by this appeal.

Plaintiff contends that the Court of Calims is the proper forum in which to seek relief where a plaintiff alleges an already accomplished[4] inverse condemnation by the State of Michigan. We agree. *Thom v State Highway Commissioner, supra; Hill v State Highway Commission, supra.* Nevertheless, the trial judge properly dismissed that part .of the original complaint which sought mandamus relief to force the defendant to commence formal condemnation proceedings. Mandamus against state

---

[3] There were eight justices on the Supreme Court in 1965.

[4] The question of what procedure is appropriate where a landowner anticipates that an inverse condemnation is about to occur is still unsettled. *See State Highway Commission v Tremarco Corp,* 37 Mich App 42; 194 NW2d 468 (1971). *But cf. Bales v State Highway Commission,* 72 Mich App 50; 249 NW2d 158 (1976).

officials must be sought in the Court of Appeals.[5] GCR 1963, 714.1(1).

The trial judge erred by failing to recognize his subject matter jurisdiction over an action for inverse condemnation. But the error was harmless since he also held—correctly—that the original complaint failed to state a claim upon which relief could be granted.

An alternative basis for the grant of accelerated and summary judgment was the judge's opinion that the Oakland County Road Commission, not the State Highway Commission, was the proper defendant because the state only served as a conduit for Federal highway funds. We do not believe that the present record is sufficient to permit an informed ruling on that point. Parallel suits by the plaintiff and the owner of the property against the Oakland County Road Commission are still pending in Oakland County Circuit Court.

After the judge announced his ruling on the defendant's motion for summary judgment, the defendant requested leave to amend its complaint. The amended complaint alleged that the defendant had planned the median strip as far back as 1961 when it purchased property for I-696 from plaintiff's landlord's predecessor in title. Plaintiff's theory is that the former owner would have demanded a higher price if he had known that the remainder of his property would not have perpetual unlimited access to all the traffic lanes on Orchard Lake Road.

The trial judge denied the motion to amend because he found "no grounds indicating that the prior opinion and order of this court should be set

<hr/>

[5] After the jurisdiction issue was raised by the defendant, the plaintiff did petition for mandamus relief in this Court. That petition was denied in *Biff's Grills, Inc v Michigan State Highway Commission* (Docket No. 29414, decided September 10, 1976 [unreported]).

aside". We do not believe that the correctness of an initial summary judgment opinion necessarily forecloses amendment of the pleadings—especially when the opinion has not yet been implemented by a judgment order. Given Michigan's liberal amendment rules, GCR 1963, 118.1, *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649; 213 NW2d 134 (1973), and the fact that the proposed amended complaint alleged a different cause of action, it would have been safer to allow the amendment and then grant a renewed motion for summary judgment. But the judge did not err. In *Fyke & Sons, supra,* at 660, the Supreme Court noted:

"On a motion to amend, a court should ignore the substantive merits of a claim or defense unless it is legally insufficient on its face and, thus, as expressed in *Foman v Davis* [371 US 178; 83 S Ct 227; 9 L Ed 2d 222 (1962)], *supra,* it would be 'futile' to allow the amendment. See 6 Wright & Miller, Federal Practice & Procedure, § 1487, p 432."

Amendment would have been futile in the present case.

Accepting as true the allegations in the proposed amended complaint, the following facts are presented. In 1961, the defendant purchased three acres of land for the I-696 expressway from a remote predecessor in title of the plaintiff's landlord. At that time, the defendant knew that the higher traffic volume caused by the expressway interchange might someday require the installation of a median down the middle of Orchard Lake Road. So, it included in its bid for the three acres an amount which reflected the diminution in the value of the remainder of the property bordering on Orchard Lake Road which would occur if the median were installed. The predecessor in title,

being unaware of the median plans, thought that the defendant's offer was very generous and so decided to accept it. If it had known about the median, it would have held out for a higher price and developed the remainder of the property in a manner which would have minimized the impact of the median.

Plaintiff argues that the facts so alleged spell out a cause of action roughly analogous to a breach of contract action for which plaintiff may recover damages despite *State Highway Commissioner v Gulf Oil Corp, supra.* We must disagree.

First, we have already shown that present law does not permit an increase in eminent domain compensation because traffic flow past the remainder of a parcel will be diminished or diverted. Therefore, if the allegation that the defendant's offer included compensation for the median is true, the predecessor in title received more than it was entitled to receive. It could not have demanded a higher price because of the median. The plaintiff has cited several cases for the proposition that a remote successor in title (including a lessee) may claim damages when the condemning authority— even years after the original taking—changes its plans or announced plans and causes further damage to that part of a parcel which was not condemned. In several of those cases, the subsequent changes amounted to eminent domain takings in their own right, thus entitling the present owners *(i.e.,* the successors in title) to compensation. *State ex rel Herman v Schaffer,* 110 Ariz 91; 515 P2d 593 (1973), *Caldwell & Ward Brass Co v State,* 161 Misc 147; 291 NYS 564 (1936), *Pennsylvania Range Boiler Co v City of Philadelphia,* 344 Pa 34; 23 A2d 723 (1942). These cases are distinguishable because no eminent domain taking occurred in the

present case while the plaintiff held its leasehold interest in the property.

Second, the remainder of the cases cited by the plaintiff involved express agreements by the grantee (usually the government in the exercise of its eminent domain powers) to either do or refrain from doing something to the condemned (or purchased) property. When, sometime after the acquisition, the grantee began using the property in a manner prohibited by the original agreement, the courts acted to protect the interest of successor owners of whatever property was left after the original taking. Usually, the relief was granted on a breach of contract theory. *United States v Georgia-Pacific Co,* 421 F2d 92 (CA 9, 1970), *Barryton State Savings Bank v Durkee,* 325 Mich 138; 37 NW2d 892 (1949), *State v Wales,* 271 SW2d 728 (Tex Civ App, 1954), *People ex rel King v Lorenz,* 34 Ill 2d 445; 216 NE2d 123 (1966), *State ex rel Herman v Schaffer, supra.*

*Schaffer, supra,* is especially instructive. There, the State of Arizona converted an existing highway right of way into I-10, a limited access highway. In the process, several access roads from adjacent landowners' properties were blocked off and replaced by a frontage road which ultimately connected with an expressway interchange at some distance from the properties. The landowners sued to recover damages. The Court held that closing off access did not constitute a taking, so long as some access—even if very inconvenient—remained. However, the Court also found that part of the consideration given by the state for taking the property from the landowners' predecessors in title had been an express promise never to close the smaller access roads.

That finding had two consequences. First, it meant that the state had breached its contract, the obligations of which ran with the land and could

be enforced by the successor owners. Second, the Court held that the contract itself created property rights and that the breach of the contract also amounted to an eminent domain taking of those contractual rights.

The plaintiff asks us to apply the *Schaffer* analysis to the present case. But it has failed to allege the express contractual promise which was the key to the *Schaffer* decision. At most, there is an allegation that the defendant showed plaintiff's landlord's predecessor in title a set of I-696 plans which did not show a median in Orchard Lake Road. If we read that as an express promise never to install a median, we would effectively prohibit modernization of highways to meet unexpected safety problems.

We are also disinclined to adopt the *Schaffer* approach because, in this case, it would amount to a circumvention of the precedents discussed in the previous sections of this opinion. The plaintiff's real problem is the totality of decisions in this state and other jurisdictions[6] which refuse to recognize an eminent domain taking where businesses are harmed by a diversion of traffic. We suspect that the rule is motivated more by a consideration of public policy, that costs would be extraordinarily high, than by legal theory. However, the precedent is absolutely binding on this Court. As we refused to challenge the rule directly, so too we refuse to circumvent it by using a *Schaffer* rationale in the absence of an express contractual promise.

Because Michigan does not recognize a cause of action for "inconvenience" of access caused by highway improvements, we affirm the judgment below.

No costs, a public question being involved.

---

[6] 2A Nichols on Eminent Domain, § 6.4443[4], pp 6–274 *et seq.*