IN RE APPROPRIATION OF EASEMENTS FOR HIGHWAY PURPOSES.

(No. 1302—Decided March 30, 1966.)

*Messrs. Meredith, Meredith, Tait & Basinger,* for appellants,

Mr. *William B. Saxbe,* attorney general, and *Mr. Allen D. Dobnicker,* for appellee.

MIDDLETON, J.   This case is in this court on appeal from a judgment entered upon the verdict of a jury in favor of the landowners for the appropriation of an easement for highway purposes of certain land owned by Harry C. Williams *et al.* The Director of Highways deposited in the court the amount he had fixed for the value of the property appropriated in the sum of

$3,350 and as damages to the residue in the amount of $15,500, or a total deposit of $18,850. The landowners appealed from this finding by the director, and, upon trial, the jury returned its verdict awarding the landowners $3,500 as compensation for land taken, $23,000 as damages to the residue, and $1,590 for interest; or a total sum of $28,090. The landowners for their assignment of errors set forth the following claims, to wit:

"1. The verdict and judgment are not sustained by sufficient evidence and are against the manifest weight of the evidence.

"2. The trial court erred in giving special instruction number 3 at the request of the appellee.

"3. The court erred in giving special instruction number 4 at the request of the appellee.

"4. The court erred in rejecting the testimony of appellants' witness, Frank H. Roediger.

"5. Other errors of law manifest on the face of the record."

In 1956, the landowners erected a motel at the intersection of Bible Road and what was then U. S. Route 25, north and east of Lima, Ohio, but later known as Interstate 75. Prior to its designation as Interstate 75, Route 25 existed as a four-lane divided highway of limited access restricted to county roads such as Bible Road. From the time the motel was constructed until an overpass was constructed over Interstate 75, the flow of traffic to the motel was from Interstate 75 through Bible Road intersection directly to the motel. The assignments of errors complained of will be discussed in their order.

In their assignment of error that the verdict and judgment are not sustained by sufficient evidence and are against the manifest weight of the evidence, the appellants complain that the verdict is based on testimony of witnesses for the state as to their appraisals of fair market value of the premises as of the date of the take, such appraisals being founded on an erroneous and illegal premise that the landowners had no right of access to U. S. Route 25 which was being taken from them in the improvement thereof to meet the standards for, and to become a part of, Interstate Route 75.

The testimony of the various witnesses as to fair market value of the premises before and after the improvement and as to compensation and damages was as follows:

| | Value at the date of take | Value after improvement | Difference in value | Compensation | Damages |
|---|---|---|---|---|---|
| Landowners' witnesses: | | | | | |
| (1) | $58500 | $5000 | $53500 | $.... | $.... |
| (2) | 53200 | 7500 | 45700 | 4600 | 41100 |
| (3) | 55000 | 7500 | 47500 | 4125 | 43375 |
| State's witnesses: | | | | | |
| (1) | 24500 | 5000 | 19500 | 2841 | 16659 |
| (2) | 23500 | 5000 | 18500 | 3200 | 15300 |

On this evidence the jury rendered a verdict which, ignoring interest, amounted to an award of $3,500 as compensation for land taken and $23,000 as damages, for a total of $26,500.

The state's appraisers each testified that he had made a first appraisal of the premises and then reappraised at the direction of the state. State's witness Smith testified that, "I appraised it on the basis that it had access from Bible Road, but no compensable access from Route 25, or Interstate 75"; that "he was told in this case to appraise this as having no indirect access to Route 75"; that physically the property did have such access; that he "didn't appraise it as it existed on July 31, 1964, or before"; that his appraisal was "based upon the instructions from a legal opinion rendered on December, 1961, to the effect the owner had no compensable or direct or indirect access from the property to Interstate 75"; and that if that were not so, his opinion as to market value as of the date of the take would be higher. State's appraiser Motter testified that he was instructed by "the Department of Highways * * * that there was no compensable right of access," and, if there had been, his opinion would have been higher. Neither of the state's appraisers was to testify as to the amount which he had reached in his first appraisals or as to the "higher" amount which the property would have been worth as of the date of the take had he not been instructed by the state that there was no "compensable right of access"; and both appraisers testified that their after value was reached because the character of the improvement was such that the motel had only salvage value.

Testimony in the record would support a conclusion that at the time the landowners acquired this property, notwithstanding that it bordered on U. S. Route 25, that route at that point had been created as a limited access highway and the land-

owners had no right of direct access from their property to U. S. Route 25. The record would further support the conclusion that the south boundary of this property extended to the center line of Bible Road and that by reason thereof the landowners' lack of right of direct access from their property to U. S. Route 25 extended all the way to such centerline.

As a general rule an owner of property abutting on a public highway has the right to use the highway in common with the other members of the public, and also the right of ingress and egress to and from his property, which right may not be destroyed without compensation therefor. *New Way Family Laundry, Inc., v. City of Toledo,* 171 Ohio St. 242. Conversely, if a limited-access highway has been newly created in such manner that the owners of adjoining land have never acquired a *right* of access to such highway, or if, having had or having acquired such *right* of access, the same has been extinguished by purchase or appropriation, the subsequent extinguishment of the *privilege* of nearby indirect access to the limited-access highway, resulting in merely a circuity of travel to reach such highway, does not constitute a taking of any property right in the landowners for which they are entitled in an appropriation action to either compensation or damages. *Rothwell* v. *Linzell, Dir.,* 163 Ohio St. 517; *State, ex rel. Merritt, Dir.,* v. *Linzell,* 163 Ohio St. 97. And, compare, *City of Bellevue, ex rel. Vickery, Solicitor,* v. *Stedman,* 138 Ohio St. 281.

On the basis of these authorities we can agree that the landowners had no right to receive compensation or damages for the loss to them of their nearby indirect access to U. S. Route No. 25, for they had no right which belonged to them which was thereby taken away. It does not follow, however, that the state's appraisers, in determining the fair market value of the land before the take, should consider the land as if it had no access to U. S. Route No. 25. It is apparent that they so construed their instructions and reduced their appraisals accordingly.

"In determining the amount of compensation, or the market value of the property taken, each case must be considered in the light of its own facts, and *every element that can fairly enter into the question of value,* and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered." (Emphasis added.) 29

Corpus Juris Secundum 971, Eminent Domain, Section 136, cited with approval in *Sowers, Supt.,* v. *Schaeffer*, 155 Ohio St. 454.

Notwithstanding that the landowners had no *right* of access directly from their land to Route 25 even as far south as the centerline of Bible Road, once they had gained access to Bible Road they had a privilege, or license, shared with the general public of access via that road to Route 25, and all their customers, potential and actual, had a like privilege of ingress and egress to and from Route No. 25 over Bible Road. Even had the landowners conveyed away all possible rights or privileges of access which they individually had to and from U. S. Route No. 25 their customers had not done so, and so long as the intersection remained open they had the privilege of reaching the motel premises through the intersection. The effective closing of the intersection did not result in the loss of any right for which anyone was entitled to direct compensation, but until that event the ability of customers to enter and leave U. S. Route No. 25 was as much an element or factor making up the market value of the motel premises as was their proximity to the city of Lima, their proximity to nearby offices and industry, and the existence of a steady demand for motel accommodations in the area. These were plus factors in determining market value. The plus factor of an open intersection with indirect and close access to U. S. Route 25 was as much an element to be considered in determining market value as was the opposite and negative factor, which always existed from the time of the creation of the intersection, that the state had the right to alter same and leave no access whatsoever to the highway at that point. All the appraisers considered the latter factor, but the state's appraisers were instructed to and did not consider the former.

Had the state of Ohio not taken any of the land belonging to appellants and/or had not changed the grade of Bible Road where it abutted appellants' land, the appellants would have had no recovery whatsoever by reason of the change of the intersection of Bible Road and U. S. Route No. 25, so that the former would no longer have access to the latter, and vice versa. But the moment the state took any of the appellants' land and/or caused damage thereto by the change of grade of Bible Road,

the appellants were entitled, in the determination of compensation and damages, to have "every element that can fairly enter into the question of value" considered, including the fact that the property was immediately but indirectly accessible to and from U. S. Route No. 25.

We are aware that the appellants' counsel did not take all action which might have been available to them to have the testimony of the state's appraisers excluded from the consideration of the jury, but, notwithstanding, since such testimony was based on a false and erroneous conception or foundation, it had no probative value on the subordinate issues of market value as of the date of the take, and the verdict of the jury and the judgment entered thereon were manifestly against the weight of the competent evidence, consisting of testimony, of the landowners' witnesses, which did have probative value. A contrary holding would result in the landowners not being compensated in the manner contemplated by Section 19, Article I of the Constitution of Ohio, and in an injustice being done.

Assignment of error number 2. Error of the court is claimed in the giving to the jury of instruction number 3: "That the landowners are not entitled to compensation or damages for loss of access to or from Interstate Route 75." We believe this instruction is a correct statement of the law and, therefore, find that this assignment of error is without merit.

Assignment of error Number 3. Appellants complain of error of the court in including in the instruction the statement that "You must not include in your award any money for attorneys fees or other expenses of litigation which you feel the landowners may have." We believe this to be a correct statement of the law. However, this instruction has no application to the issues in the present appropriation action where the only issue is a finding by the jury of the compensation to be paid the landowners for the property taken and the damages resulting to the remainder by reason of such appropriation. While this instruction should have been refused, no prejudicial error resulted to the appellants.

Assignment of error Number 4. Error of the court is claimed in its rejection of the testimony of appellants' witness Frank H. Roediger. "The qualification or competency of a witness to testify as an expert or to give his opinion on a par-

ticular subject rests with the trial court in an appropriation proceeding, and, on appeal, its rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion.'' 19 Ohio Jurisprudence 2d 597, Eminent Domain, Section 174. Nor did the witness qualify as an expert, and the court did not abuse its discretion in rejecting his testimony. This assignment of error is overruled.

Assignment of error number 5. Other errors of law manifest on the face of the record. The claimed errors set forth in this assignment are fully discussed and disposed of by assignment of error number 1 and will not be further discussed under this assignment of error.

For the reasons herein stated the judgment of the court is reversed and the cause remanded to the Common Pleas Court for further proceedings.

*Judgment reversed.*

YOUNGER, P. J., concurs.

GUERNSEY, J., concurring in part. I concur in the judgment and in all of the foregoing opinion except that part thereof where the majority concludes that the special instruction before argument as to the landowners' attorneys' fees and other expenses of litigation ''has no application to the issues'' and ''should have been refused.'' It is too basic to deserve repetition that the provision of Section 2315.01, Revised Code, as to the giving of special instructions before argument, ''is mandatory, and a refusal to give a requested instruction, if it is in writing and contains a correct proposition of law applicable to the issues in the case, is erroneous even though the court in its general charge may give it or the substance thereof in its own language.'' *Lima Used Car Exchange Co. v. Hemperly,* 120 Ohio St. 400. In my opinion the special instruction thus requested by the Director of Highways, in written form, contained a correct proposition of law applicable to the issues of compensation and damages. The court did not commit error in giving the charge and would have committed error had it not done so.