IN RE APPROPRIATION OF EASEMENT FOR HIGHWAY PURPOSES.
(Two cases.)

[Cite as In re Appropriation of Easement, 8 Ohio App. 2d 252.]

(Nos. 688 and 689—Decided November 16, 1966.)

Mr. *William B. Saxbe,* attorney general, and Mr. *Allan D. Dobnicker,* for appellant Director of Highways.
Mr. *Martin L. Hanna,* for appellee landowners.

YOUNGER, P. J. These two cases in appropriation were filed in the Common Pleas Court of Hancock County, one on June 28, 1965, and the other on July 9, 1965, by which the Director of Highways of the state of Ohio seeks to appropriate approximately .35 of an acre in each case to be used as turnarounds on the east and west sides of Township Road 100 adjoining the right-of-way of Interstate 75, the part of Township Road 100 previously lying between the east and west right-of-way lines of Interstate 75 having previously been vacated. These turnarounds were deemed necessary by the highway director to prevent both of these sections of Township Road 100 from becoming completely dead ends or cul-de-sacs. These two cases were consolidated for hearing.

That portion of Township Road 100 lying between the east and west right-of-way lines of Interstate 75 was vacated on December 23, 1964, by the Court of Common Pleas of Hancock County on appeal from the order of the county commissioners refusing to vacate such section. Those proceedings were had under, and were governed by, the provisions of Section 5553.04, Revised Code, and the landowners in both cases filed applications for compensation and damages for the vacation of this road in May 1963, with the Board of County Commissioners of Hancock County under the provisions of Section 5553.12, Revised Code, in effect at the time but since repealed. The commissioners had not acted on this matter up to the day of trial. Appeal from the action of the board of county commissioners, if taken, was provided in Section 5553.17, Revised Code, in effect at the time but since repealed, and was to the Probate Court of Hancock County.

The present cases, of course, were instituted under Section 5519.01 *et seq.*, Revised Code, in the Court of Common Pleas of Hancock County.

It is the contention of the appellant, Director of Highways, that the applications for compensation and damages for the vacation of the part of Township Road 100 lying between the right-of-way lines of Interstate 75, with appeal to the Probate Court, and these two appropriation cases for turnarounds outside the right-of-way of Interstate 75 are two separate and distinct proceedings and that the action of the trial court in permitting evidence and argument to go to the jury in these

cases as to the damages to the residue resulting from the vacation was prejudicial error.

The evidence disclosed that the Director of Highways had not taken possession of the premises involved in these appropriation proceedings and had done no work thereon, and, as a result, the trial court properly held that the day of the take of these two small parcels was November 17, 1965, the date of trial. During this day the landowners in both these cases went to the office of the Board of County Commissioners of Hancock County and dismissed their claims for damages for the vacation. In these cases the landowners make the following statement in their brief:

"It should be further noted that these claims were withdrawn from the county commissioners office as soon as it was apparent that they would be considered in the present two cases," and "In as much as both the vacation and turnaround were inextricably woven together, there was no better place than in the instant cases to adjudicate the total damage arising out of the vacation of Township Road 100."

The trial court refused to give the following special instructions requested by the appellant:

"Special Instruction No. 3

"I instruct you as a matter of law that damages to the residue, if any, which occurred to the Niekamp and Rettig properties by virtue of the vacation of a portion of Township Road 100 are not a part of this case, and that you are not to consider them in arriving at your verdict."

"Special Instruction No. 4

"I instruct you as a matter of law that the portion of Township Road 100, lying between the right of way lines of Interstate 75, was vacated by the Hancock County Commissioners on December 23, 1964, pursuant to an order of this court. You will therefore consider, in arriving at the fair market value of the land taken, and damages to the residue, if any, that Township Road 100 had no legal access to Interstate 75 as of the date of the taking."

The refusal of the court to give these special instructions was prejudicially erroneous. In addition, at the close of the general charge, the court stated to the jury:

" * * * it has been called to the attention of the court, that

the court may have erroneously made a statement with respect to consideration for the closing or vacation of the township road, in regard to damages. The jury is instructed that it may consider the vacation or turnaround which in effect terminates the road so far as the law is concerned, with respect to the damages to the landowners.''

It is noted that the various appraisements for the land taken for the turnaround from Niekamp were between $180 and $400, while the verdict was for $4,000, which included $300 for the land taken; and the appraisements for the Rettig land were between $115 and $300, while the verdict was for $4,600, including $300 value of land taken.

Such action of the trial court in permitting evidence and argument as to damages by reason of the closing or vacation of this road to be injected in the appropriation cases for the turnaround areas was prejudicially erroneous. Damages for the vacation of the road as may be allowed by the Board of County Commissioners or the Probate Court on appeal are payable from the county treasury, while compensation for land taken in appropriation proceedings is payable by the state of Ohio.

Under this ruling of the court the attorney for the landowners was permitted to argue to the jury over objection that the landowners' direct route to the city of Findlay was cut off; that they would have to travel a longer distance on the township road which would be snowbound part of the time in the winter; and that in case of serious illness an ambulance would be late or prevented entirely from arriving at the farm home, and in the event of fire the fire department would likewise be hindered. None of these matters has any connection with the appropriation of .35 of an acre for turnaround purposes on the township road, which had been closed previously to the day of take by the vacation above referred to.

The appellant further contends that the trial court erred in permitting counsel for the landowners to indulge in improper and prejudicial argument to the jury in his closing argument.

The argument claimed by appellant to be improper and prejudicial is shown in part by the following excerpt from the bill of exceptions:

''Now, think for a moment that your name is Rettig or your

name is Niekamp.  Not that you'd want a million dollars, not to exploit the state of Ohio, but what would you feel was fair and square, and you were reasonably entitled to * * *.

"Mr. Dobnicker: Objection to the form of closing argument. It's not proper, asking the jury to place themselves in the place of the people.

"Mr. Hanna: I think it's very proper.

"Court: Talking about compensation here, or fair and reasonable * * *.

"Mr. Hanna: I told them I'm not asking them to exploit the state of Ohio; just asking them to think with me what would you think was fair if it were your home and one day you had a fine, true main artery open highway * * *.

"Mr. Dobnicker: I object again to the form of the argument.

"Court: Overruled.

"Mr. Hanna: * * * And the next day you had a closed highway, and your great government and my great government came to you and said, 'We're going to pay you for this little corner down here, and that's all.' That's all we're going to pay you, and we want you to go somewhere else and try to get some more money, and you would sit there and know you had been trying in that other place to get some money and paid and compensated since 1963, and that's what the young lady from the commissioners' office stated, and you know you've waited almost three years, and hadn't got a nickel, and you had no assurance that you'd ever get a nickel.

"Wouldn't you want to be paid in this case? If you're only asking to be paid once, and that's today, and today's forevermore, and no matter how that community blossoms and how this great city grows and industries bring more and more valuable property; today is the only time you'd ever be paid for the loss of the corner and the loss of access. This is the only day that you'd have to gamble your life on the ambulance being five minutes late; this is the only day that five minutes, or a loss of three or four or ten minutes might result in the destruction of your home * * *.

"Mr. Dobnicker: I'm going to object to this; the question is the value of the property and not ambulance service or fire service, or anything else.

"Court: Overruled."

This type of argument is a species of the "Golden Rule Argument" which this court found objectionable and incompetent in the case of *Boop* v. *Baltimore & Ohio Rd. Co.* (1963), 118 Ohio App. 171, in which Judge Guernsey stated in the opinion:

"This type of argument, where the jurors are asked to put themselves in the place of plaintiff, is commonly known as the 'Golden Rule Argument' and, upon objection being made, is normally considered objectionable and incompetent for the reason that it constitutes an appeal to the jury to abandon their position of impartiality and to exercise their discretion in the guise of an interested party."

Upon the reasoning in the *Boop case*, the argument here indulged in was incompetent and prejudicial in that the members of the jury, as demonstrated by the verdicts returned, followed this argument, abandoned the impartial attitude they are required to maintain and decided the case as if looking through the eyes and sitting in the place of the landowners.

For the above reasons the judgments of the trial court must be reversed and the causes remanded for new trial.

*Judgments reversed.*

GUERNSEY and MIDDLETON, JJ., concur.