In re Appropriation for Hwy. Purposes of Lands of
Williams et al.

(No. 1223 Decided August 7, 1968.)

*Mr. William B. Saxbe,* attorney general, *Mr. Harold B. Talbott* and *Mr. Ralph C. Godwin,* for appellant.
*Mr. F. K. Cassel, Mr. Edwin B. Spohn* and *Mr. G. A. Piacentino,* for appellees.

COLE, J.  This is an action for condemnation of land for highway purposes.  The land involved is a trapezoid fronting to the west on Marion Street in the village of Waldo, Marion County, Ohio, which, at the time of taking

and for many years prior thereto, was U. S. Route No. 23. The frontage on this street was 134 feet. On the east the property was bounded by a local street known as Portland Street, with a frontage of 46.93 feet. On the north the land was 85 feet deep, and on the south 74.15 feet deep.

The state decided to relocate and improve U. S. Route No. 23 and to do so designed a four-lane limited-access route to be constructed, which, at this point, ran roughly north and south to the east of the landowner's premises, and this required the taking of a triangular parcel of the above-described land 21 feet in depth and about 90 feet long off the northeast corner, the taking of Portland Street and the right of access on the boundary of the premises.

On the parcel, at the time of the taking, was a two-story frame house in which the landowner resided, and a two-story brick building used and operated by the land-owner as a restaurant-tavern. There was a small garage in the southeast corner. None of the structures was on the land taken.

The principal question raised by the briefs and the facts concerns the problem of changed traffic flow from the old U. S. Route No. 23 in front of the land to a limited-access alternate route to the rear of the premises.

A verdict was returned by the jury of $525 for the value of the land taken and $5,025 for damages to the remainder. From this the state has appealed on questions of law.

In the first assignment of error appellant complains as to the admission of evidence predicated upon the assumption the property owner was entitled to damages caused by a change in the flow of traffic past his property. In the second assignment of error the state contends that the testimony of one witness as to value should have been stricken primarily on the same basic ground, i. e., that a large element in his opinion as to damages to the residue was predicated upon diversion of the traffic flow. The third assignment of error is the court's refusal to give the following charge:

"The owner of land abutting on a highway has no

property right in the continuation or maintenance of the flow of traffic past his property, and the diversion of traffic as the result of an improvement in the highway or the construction of an alternate highway is not an impairment of a property right of such owner for which damages may be awarded."

This alleged error is also based upon the basic issue as to the consideration of damages due to diversion of traffic. Because this same issue is inherent in all three assignments of error we shall consider them at the same time.

In *State, ex rel. Merritt,* v. *Linzell, Dir. of Highways,* 163 Ohio St. 97, the third paragraph of the syllabus reads as follows:

"The owner of land abutting on a highway has no property right in the continuation or maintenance of the flow of traffic past his property, and the diversion of traffic as a result of an improvement in the highway or the construction of an alternate highway is not an impairment of a property right of such owner for which damages may be awarded."

In the opinion, the court says, at page 104:

"It is now an established doctrine in most jurisdictions that such an owner has no right to the continuation or maintenance of the flow of traffic past his property. The diminution in the value of land occasioned by a public improvement that diverts the main flow of traffic from in front of one's premises is noncompensable. * * * The change in traffic flow in such a case is the result of the exercise of the police power or the incidental result of a lawful act, and is not the taking or damaging of a property right. * * *"

In the instant case the premises involved abutted on two streets. In the front it abutted on Marion Street, also known as U. S. Route No. 23, and it was here that the bulk of the traffic occurred. It was this traffic which was basically involved in testimony as to value. To the rear, taken as a part of the condemnation, was Portland Street, which was relatively little traveled, and the access thereto, which was also taken, together with a part of defendant's land in

the form of a narrow triangle about 21 feet by 90 feet on the long sides.

It is obvious from the opinion cited above that the landowner had no property right in the flow of traffic on either street. It might be large or small depending on the choice of the traveling public or the availability of alternate routes, but no property right in any degree of traffic belonged to the landowner. It is also obvious from the cited opinion that the provision by the state of an alternate traffic route was an exercise by the state of a lawful power, and the diminution of the traffic resulting therefrom on either street was incidental to the exercise of this power and would result in no compensable damage to the landowner in the absence of a taking of land. If the new route had been located two blocks from the premises in question and none of the defendant's land had been taken, there would be no issue to resolve. Neither defendant nor any other property owner along old U.S. Route No. 23 (Marion Street) would suffer compensable damage. They would have, perhaps, less traffic. The land values might decrease, but none would have suffered the loss of a property right. The damages would not differ in kind, only in degree, as the changed traffic flow affected each particular property—and none would be compensable. Each property owner at the time of his purchase of his property assumed certain risks, one of which was this shift and change in the volume of traffic along the street abutting his premises, and risk of decrease thus assumed, in fact, occurred. For this no compensation is granted.

The problem here, however, arises because a portion of the defendant's land was in fact taken. He thereby became entitled to compensation for the land thus taken and for the damages to the residue of his land not taken. The formula for determining the damages is essentially the difference in the fair market value of the property before the taking diminished by the fair market value of the portion taken less the fair market value after the taking. In *In re Appropriation for Hwy. Purposes,* 13 Ohio App. 2d 125, this court held that in the determination of fair mar-

ket value "* * * every element that can fairly enter into the question of value, and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered, * * *." In that case market value before the taking was under consideration, but the same elements enter into any determination of value, be it before, or, as here, after, the taking.

Would not then an ordinarily prudent business man as a willing buyer, contemplating retail commercial use as the highest and best use of the premises, give consideration to the decreased traffic flow resulting from the provision by the state of an alternate limited-access route for transient traffic? It must be answered that he would. And would not this element in his judgment lower the value of the premises after the taking by a substantial amount? It again must be answered that it would.

It would, therefore, appear at first glance that evidence pertaining to loss of traffic flow would be admissible on the question of damages to the residue.

However, we are faced with a paradox. Other owners along old U. S. Route No. 23, whose land was not in any way taken, still have no right to damages for the loss of traffic flow, but this landowner, because a comparatively small part of his land was taken, would apparently become eligible thereby to recover the same damage, differing only in degree from his neighbors but not in kind. This paradox is well stated in *Johnson's Petition,* 344 Pa. 5, 23 A. 2d 880, at page 11:

"To adopt the contention of the landowner as a general legal principle would lead to absurd results. Assume, for the sake of argument, that the state had taken only a few square feet from the northern tip of this land. Then under appellee's theory he would have been entitled to have diversion of traffic considered in determining the market value after the taking. This illustration shows that the claim made here is not for damages due to the taking * * * but for an ensuing result that was too remote to have relevance in fixing damages. The loss in traffic was directly due to changes in the connection at points remote from the land taken. The results were not peculiar to this land owner

but were shared to a greater or less degree by all properties located on the old road. It followed as a result of the highway department's determining that an additional route should be furnished for the accommodation of the public and the result is *damnum absque injuria*."

There is a further statement of the problem in the dissenting opinion in *Pike County* v. *Whittington*, 263 Ala. 47, 81 So. 2d 288:

"The following illustrates the result reached by the majority. A and B could be adjacent land owners, each fronting 200 feet on a state highway. A's lot is 200 yards deep. B's lot is only 198 yards deep. Each has a filling station and grocery store facing the highway and do a comparable business. The highway is relocated so as to pass 199 yards behind their places of business. It thus takes one yard of A's property but none of B's. A would be entitled to compensation because the flow of traffic on the old highway was taken away from him while his neighbor B would, under practically all the decisions in all the states, be entitled to nothing. * * * There is something about such a result which to me seems unfair and unjust. * * *"

In *Nelson* v. *State Highway Board*, 110 Vt. 44, 1 A. 2d 689, 118 A. L. R. 915, the court deals specifically with the impact of the market value theory. Having first dealt with other market value situations, it says, at page 53, "As applied in these cases above cited the market value rule furnishes the correct measure of damages. But care must be exercised in applying this rule. As is stated by Mr. Elliott in his work on Roads and Bridges, vol. 1, page 359, 'There are many injuries resulting from the opening of streets and roads for which landowners cannot receive compensation.' Should compensation be allowed for any such injuries in determining the market value of what remains of a parcel of land, a part of which has been taken for a road, it follows that the result will not be correct in law."

The problem would seem to arise essentially because of the fact *two* causes are operating simultaneously. If only land is taken without respect to flow of traffic (as would be the case if the land in question never was on the

old major highway), then the market value formula would be correct. On the other hand, if no land is taken but the highway is relocated, the action is lawful governmental action and the change in the flow of traffic incidental thereto is *damnum absque injuria*. It is where the two causes, *i. e.,* the condemnation and the relocation, operate at the same time and on the same parcel that an apparent conflict exists. Actually, the market value theory works—but because the two processes operate simultaneously the value after the taking reflects the result of both causes. If we would consider the two processes as operating in sequence, the results would be separated and the market value theory of damages properly applied.

1.  The difference between the market value before taking the land and the value of the residue afterwards would give the compensation and damages attributable simply to the exercise of the power of eminent domain.

2.  Then, after the taking, assume the impact of the relocation and change in traffic flow. Then the formula would give the damages resulting from the exercise of a lawful governmental power which in fact occurs but for which no right of compensation exists.

Such a separation of actions, however, is a confusing and artificial method. It is far simpler to say that the element of changed traffic flow should not be admitted into evidence and should not be considered either by experts in formulating their opinion as to value of the residue *after* the taking or by the jury in determining the value *after* the taking. To rule otherwise would invoke the obviously unjust and unfair results whereby two landowners in the same situation would be treated differently simply because of the taking by appropriation of a small part of the one landowner's property. Each had assumed the same risk that lawful governmental action could affect the traffic flow. Each had no right to damages for diminution of that flow, and this result should not be changed because in the one case the lawful governmental action of relocation occurs simultaneously with the action of appropriation.

*In re Appropriation of Easement for Highway and Slope Purposes,* 101 Ohio App. 1; *Nelson* v. *State Highway*

*Board,* 110 Vt. 44, 1 A. 2d 689, 118 A. L. R. 915; *Riddle* v. *State Highway Commission,* 184 Kan. 603, 339 P. 2d 301 (dissenting opinion at page 617); *Johnson's Petition,* 344 Pa. 5, 23 A. 2d 880.

See, also, *State* v. *Linder,* 111 Ohio App. 146; *Board of County Commrs.* v. *Slaughter,* 49 N. M. 141, 158 P. 2d 859; 29A Corpus Juris Secundum 702, and cases therein cited.

We, therefore, conclude that the diminution in the flow of traffic past a business property by action of the state in relocating a highway is not the taking of a property right and, hence, where some of the land of that business property is taken, it is not a proper element of damage to be considered in arriving at the fair market value of the residue after the taking. For this reason the admission of testimony as to traffic flow on Marion Street after the taking and its possible impact on the landowner's business in the present case was error, and the valuation testimony of the expert witness who included this in arriving at fair market value after the taking was, to this extent, invalid and prejudicial and should have been excluded.

However, this deals only with the problem as it related to Marion Street, for here there was no impairment or taking of access. Ingress and egress were the same before and after the taking. As to Portland Street, at the rear of the premises, a different situation obtains. The taking included not only the land but also the right of access formerly existing as to this street. This was, of course, a definite property right for which compensation is awarded. Is evidence of traffic flow on Portland Street pertinent to the valuation of his right? From what has been said above it is apparent the landowner has no property right in any particular degree in the flow of traffic. His right of access is, therefore, the right of ingress and egress to and from the premises for himself and for others but without regard to *the volume of traffic* using the ingress and egress. Therefore, evidence of traffic flow or its diminution or increase along Portland Street would be immaterial to the determination of the value of the access or damages to the residue resulting from the taking.

Traffic flow is, however, still pertinent to the case. In

determining the fair market value of the premises *prior to the taking* one element that would be pertinent to the determination would be the then existing traffic flow. This would be a positive factor tending to increase the value. Counterbalancing this would be the negative factor of risk assumed by a willing buyer that the state in the exercise of its lawful governmental power might relocate or redirect traffic to alternate through routes. The net result of the weighing of positive and negative factors would be a part of the valuation process.

*In re Appropriation for Hwy. Purposes,* 13 Ohio App. 2d 125.

See, also, *In re Appropriation for Highway Purposes,* 6 Ohio App. 2d 6, where the privilege of access to an Interstate Route (circuity of travel rather than traffic flow) was considered.

Therefore, evidence as to the traffic flow as it existed prior to the taking would be pertinent to this extent, and testimony as to such traffic flow was properly admitted.

We, therefore, conclude:

As to the first assignment of error: The court was in error in not sustaining the state's objection to the opening statement of landowner's counsel that less than half the vehicles formerly traveling past the landowner's premises would do so in the future, and, further, in failing to sustain the objection of the state to the testimony of the expert witness McClelland as to damage to the residue predicated upon the change of traffic flow.

As to the second assignment of error: Part of the expert's testimony was pertinent and proper, but, to the extent that he testified to damages predicated on traffic flow and to a valuation of the residue which was based on this factor, the motion to strike should have been sustained.

As to special charge No. 9: This is a proper statement of the law applicable to this case.

We are aware that the trial court may properly refuse to give an instruction which is abstract in nature and which has not been adapted to the particular facts and issues adduced at the trial even though the charge be, in its broad

statement, correct. Here, however, the specific impact of traffic flow on damages was raised by the facts, and evidence as to traffic flow on Marion Street, both before and after the taking, was admitted. The charge as requested was specifically pertinent to the issue, and refusal to give it, in the light of the testimony, was error prejudicial to the rights of the state.

The fourth assignment of error deals with the admission of evidence as to speed limits on U. S. Route No. 23 before the relocation and after the relocation. Following the reasoning given above, there is no property right of an abutting landowner in a particular speed limit imposed on traffic on the street or streets on which his property abuts. 2 Nichols on Eminent Domain 591, 593. This is clearly a matter within the scope of the police power of the state or its subdivisions, and damage, if any, resulting from the valid operation of the police power is *damnum absque injuria. State, ex rel. Merritt,* v. *Linzell, Dir. of Highways,* 163 Ohio St. 97. And the fact some property was taken does not thereby serve as an indirect method to obtain compensation for such damage which differs not in kind but only in degree as to all properties along the respective routes whether land be taken or not. Hence, we would conclude that evidence as to change in speed limits would be inadmissible to show damage to the residue.

However, the speed limits on Portland Street and Marion Street on the day of taking might conceivably have some impact on the judgment of a reasonably prudent, willing buyer, and, to the extent they might have this bearing, they would be admissible. But again, the positive element would again be balanced by the fact that speed regulations were subject to change without compensation. However, evidence as to the speed limits on relocated U. S. Route No. 23 as they would exist after the taking could have no significance except as to damages and would be inadmissible as outlined above.

To this extent, therefore, the court erred in overruling objections to testimony concerning the speed limits proposed or possible on relocated U. S. Route No. 23.

The fifth assignment of error concerns the admission over objection of testimony concerning parking on Portland Street and Marion Street. Parking, again, is a subject within the scope of the police power of the state or its subdivisions. The abutting property owner has no property right in any specific parking regulation and, hence, its change does not produce compensable damage. To the extent that parking regulations existing on the date of the take might be considered as bearing on the market value on the day of the take, they would be admissible, balanced again by the weight to be given the negative element of the right of the state or its subdivisions to change these regulations at any time and the probability or improbability of such change.

However, the testimony of witness McClelland was to loss of parking on the street as an element of damage. For the reason cited above this was inadmissible as an element of damage, and the court erred in overruling the objection.

The sixth assignment of error deals with a plat which constituted landowner's Exhibit No. 1. The variance in dimensions which appears between it and the state's plat concerns the residue after the take and is relatively small. It has no bearing on the quantity of land taken and remains the same before and after the taking. The designation of the building on the premises as a restaurant tavern was essentially descriptive and indicated the present use of the structure. The designation of the speed limit on relocated U. S. No. 23 was, in the light of the previously discussed assignment of error, improper, but, in the light of common experience with speed limits on limited-access routes, a matter in the general knowledge of the jurors. We feel the error was not prejudicial, and the assignment of error is not well taken.

The seventh assignment of error concerns the admission of evidence concerning the business conducted on the premises.

a. Objection is made to the use of the word tavern. That the use of the premises at the time of the taking was as a restaurant tavern is admitted. This is the current use

of the premises and at the time of the taking may have been the highest and best use. We do not believe reference to the specific use is prejudicial to the state.

b. Reference is made to the mode of operation and convenience of use, particularly with reference to deliveries. One property right here taken is the right of access from Portland Street. Although the question of convenience to the particular business may not be an element of damage, if the loss of one mode of access to the premises created problems in retail commercial use by virtue of the placement of buildings and the placement of entrances, driveways and exits, these problems would bear upon the damages to the residue caused by the loss of access. They are items which would be considered by a reasonably prudent, willing buyer to determine the price he would pay for the premises after the taking. They do not involve the element of *damnum absque injuria* discussed in the first assignment of error. Whatever influence they might have arises from the loss of access, and the loss of the part taken, and to use the impact on operation goes to establish the impact on the highest and best use as a retail-commercial operation. They are not simply consideration of convenience, but bear on the value after the taking as affected by the reorientation of existing physical structures to the remaining land and to the remaining modes of ingress and egress.

c. Objection is made to testimony that over fifty per cent of the tavern's customers were transient trade. Such testimony, if considered as bearing on damages, would be predicated on change of traffic flow and inadmissible under the rules heretofore cited. If it be considered as being an element bearing on value of the whole at the moment prior to the taking, it can only be concluded it bears on the value of the business, not the value of the real estate. There is a clear distinction between the volume of traffic, which would be pertinent to the value of the real estate for retail commercial purposes, as set forth above, and the transient traffic actually stopping at the tavern, which bears solely on the business operation. It might bear on the efficacy of the ad-

vertising or reputation or matters of good will wholly unrelated to the value of the land and buildings. There is no compensation for a business operated on the real estate—simply for the real estate itself, unless, of course, the business itself is appropriated. 27 American Jurisprudence 2d 83, Section 285. For this reason we conclude such testimony was pertinent neither to damages nor to compensation and, in view of the other evidence admitted on damages resulting from the changed flow of traffic, the error was prejudicial.

In the eighth assignment of error objection is made to the giving of special charge No. 6 as follows:

"In determining damages to be awarded in this case, you can take into consideration every element of inconvenience, danger, noise, fear and interference with enjoyment and use of home and business, and disadvantage resulting from the maintenance of the non-access highway which will influence any intended purchaser's estimate of the market value of such property."

The use in this charge of words "any intended purchaser" does not correctly set forth the appropriate test to be applied. In the case of *Masheter, Dir. of Hwys.*, v. *Yake*, 9 Ohio App. 2d 327, this court said:

"* * * Nor is market value, or damages, determined by the influence these elements would have on *any intended purchaser*. * * * The test of influence or consideration relates not to *any intended purchaser* but to *an ordinarily prudent business man*. * * *"

For this reason, if for no other, the charge was erroneously phrased and was prejudicial to the state.

For the reasons heretofore set forth the judgment of the trial court is reversed and the case remanded for a new trial.

*Judgment reversed.*

GUERNSEY, P. J., and YOUNGER, J., concur.