IN RE APPROPRIATION FOR HWY. PURPOSES OF LANDS OF ARNOLD ET AL. (Two cases.)

58

(Nos. 1409 and 1410—Decided July 8, 1970.)

*Mr. Paul W. Brown,* attorney general, and *Mr. Allan D. Dobnicker,* for appellant Director of Highways.

*Messrs. Meredith, Meredith, Tait & Basinger,* for appellees landowners.

GUERNSEY, J. These appeals present the further development of some of the peculiar problems arising from the improvement of U. S. Route No. 25, hereinafter referred to as Route 25, in northwestern Ohio to satisfy Federal Interstate Highway System standards so that that highway might become a part of that system as Interstate Route No. 75, hereinafter referred to as I-75, and constitute an extension of a series of appeals determined by this court respecting these problems, including *In re Appropriation for Highway Purposes (Williams property),* 6 Ohio App. 2d 6; *In re Vacation of Road,* 6 Ohio App. 2d 73, motion to certify overruled (40275), October 5, 1966; *In re Appropriation of Easement,* 8 Ohio App. 2d 252; and *In re Appropriation for Hwy. Purposes (Winkelman property),* 13 Ohio App. 2d 125, motion to certify overruled

(68-398), November 20, 1968. See, also, *In re Appropriation for Hwy. Purposes*, 15 Ohio App. 2d 139, motion to certify overruled (68-564), January 15, 1969. To avoid unnecessary repetition reference is hereby made to these cases, and the cases cited therein, as background for the factual situations and the rules of law herein involved.

Before any of the proceedings here took place, Route 25 had been relocated and constructed in 1952 as a four-lane divided highway running in a northeasterly direction from Lima to Beaverdam with access thereto limited to intersections (at grade) with existing roads and with fences constructed on the boundaries existing between the right of way and abutting properties except at road intersections. At the location in question Yant Road, a road under the vacation jurisdiction of the Board of County Commissioners of Allen County, hereinafter referred to as the commissioners, ran in a north and south direction, and State Road, also under the vacation jurisdiction of the commissioners, ran in an east and west direction, each of these roads also intersecting with and crossing Route 25. At a point 351.92 feet east of the intersection of the centerline of State Road with the southeasterly right-of-way line of Route 25 and at a similar distance south of the intersection of the centerline of Yant Road with the same right-of-way line of Route 25, the centerlines of State Road and Yant Road intersected at right angles. The real property involved in these appeals is triangular in shape, the southeasterly right-of-way line of Route 25 constituting the hypotenuse thereof, and the centerlines of Yant Road and State Road being the remaining two sides. Although at all times here pertinent this land has been owned by Richard D. Arnold, hereinafter referred to as Arnold, his predecessors in title, in connection with creating the right of way for the relocation of Route 25, conveyed to the state of Ohio all right of direct access from this property to Route 25 which they might otherwise have had along this hypotenuse, including those portions thereof lying between the west right-of-way line and the centerline of Yant Road and lying between the north right-of-way line and the centerline of State Road.

Arnold acquired this triangular tract in 1957 and, after certain grading, constructed thereon a cement block building designed to accommodate a filling station and small restaurant. The premises were thereafter so used with direct access therefrom to Yant Road and State Road and indirect access therefrom to Route 25 over Yant Road and State Road, the ordinary means of ingress from Route 25 being over one of these two roads and the ordinary means of egress to Route 25 being over the other.

Route 25, along with other principal highways in Ohio, had been designated a defense highway and, under the provisions of the Federal-Aid Highway Act of 1958 as implemented by R. C. 5531.06, the Ohio Director of Highways, hereinafter referred to as the director, was given authority to accept from the federal government as much as 90 per cent of construction costs if the highway were improved to conform to interstate highway standards, including the elimination of all intersections at grade, the highway to become upon completion of such improvement a part of the interstate highway system. See *In re Vacation of Road,* 6 Ohio App. 2d 73, 81. Thereafter, contracts were let by the director to improve various segments of Route 25 between Toledo and Cincinnati to meet those standards. Although construction contracts for the improvement of the segment on which the property in question is located were not executed until November 27, 1964, specific right-of-way plans for this segment, indicating that Yant Road would be vacated over U. S. 25 and that State Road would be carried over Route 25 by means of an overpass, were approved and publicized prior to July of 1962.

Meanwhile, on January 22, 1964, the commissioners, pursuant to resolution, entered into a co-operative agreement with the director, reciting the desire of the director to construct a highway improvement constituting Section 9.08 of "State Route No. U. S. 25 (I. R. 75)," and the necessity of closing and vacating portions of certain named county roads, including Yant Road, the commissioners agreeing "to adopt forthwith, proper legislation and proceedings to close and vacate the described portions of the roads" under their jurisdiction and the state agreeing

that it "will pay the county for the necessary costs incurred in said proceedings, including all claims for damages." Pursuant to vacation proceedings Yant Road was, on February 24, 1964, vacated between the right-of-way lines of Route 25, as well as over the right of way of a railroad adjoining Route 25 on the northwest. On March 25, 1964, Arnold filed his claim with the commissioners for $50,000 for compensation and damages by reason of the vacating of Yant Road. On June 8, 1964, finding that the claim was "not compensable under state law," the commissioners denied same, and Arnold appealed to the Common Pleas Court. Yant Road was not physically closed until February 1, 1965, at which time a barricade was erected along the southeast right-of-way line of Route 25.

In Common Pleas Court the commissioners moved to dismiss Arnold's appeal on the ground that "damages were not payable under Ohio law," and, upon that motion being overruled, they then appealed to this court. This court dismissed the appeal as not being from an appealable order. The road vacation appeal therefore remained for hearing in Common Pleas Court.

In order for the state to effect the bridging of State Road over Route 25 it was necessary for it to acquire additional right of way for State Road, including a triangular tract of 0.30 acre from the south side of the Arnold property. On April 2, 1964, the director initiated appropriation proceedings for this property under the provisions of R. C. Chapter 5519 by adopting an appropriation resolution, and Arnold filed his statutory "appeal" therefrom in the Common Pleas Court on May 5, 1964.

On November 15, 1964, over the objection of both the commissioners and the director and pursuant to a motion of Arnold for "consolidation," the Court of Common Pleas ordered the appeal in the Yant Road vacation case and the appeal in the appropriation action "consolidated *for the purpose of trial.*" (Emphasis added.)

On July 2, 1965, the contractor charged with erecting the State Road overpass entered into possession of the land appropriated.

On June 12, 1969, motions were filed by the commis-

sioners and the director for separate jury verdicts, and, on July 7, 1969, the cases proceeded to trial by jury. The motions for separate jury verdicts were overruled, and a single verdict of $4,100 as compensation for land taken and $119,000 as compensation for damages to the residue, a total of $124,000, was rendered by the jury. A single judgment on this verdict, with interest thereon, was rendered and filed by the Common Pleas Court in that court in each of the cases on appeal, which, among other things not here pertinent, ordered the director to deposit with that court in the appropriation case only a sum of money, which with the original deposit in the appropriation action would satisfy the judgment, to "be paid by the clerk to the landowners herein, as their interest may appear, in an order for distribution made by the court."

From that judgment filed in the road vacation appeal the commissioners filed their notice of appeal to this court. From that judgment filed in the appropriation action the director filed his appeal to this court. As both appeals had been heard together in the Common Pleas Court, resulting in a single bill of exceptions and an apparent singularity of issues, the appeals in this court were likewise briefed and heard together. The commissioners and the director assign error of the Common Pleas Court in fifteen particulars.

To simplify our consideration of these assignments we observe at the outset that the road vacation appeal was filed in the Common Pleas Court under the provisions of R. C. 5563.02 *et seq.* as then in effect. Nevertheless, no judgment on appeal was rendered as contemplated by those provisions, nor did the judgment rendered and filed operate in any of its provisions or aspects against the commissioners. We conclude, therefore, that even *if* the commissioners would otherwise have the capacity to appeal from a judgment entered on appeal from a decision rendered by them in a road vacation proceeding, and even *if* the judgment entered was a final judgment on such appeal, the commissioners were not aggrieved by that judgment and are not entitled to prosecute an appeal therefrom in this court. *Ohio Contract Carriers Assn.* v. *Public Utilities*

*Commission,* 140 Ohio St. 160. It is ordered, *sua sponte,* that the appeal in case number 1410 be dismissed. Our disposal of the assignments of error will consequently be limited to a determination of whether the Common Pleas Court erred in the particulars assigned with respect to the director and the appropriation action, and, if so, whether such error was prejudicial to the director.

I. The first assignment involves whether the Common Pleas Court erred in ''consolidating for trial the road vacation proceeding and the appropriation proceeding.''

Before an appellate court may reverse, the record must show affirmatively not only that error intervened but that such error was to the prejudice of the appellant, and that is true with respect to an issue of consolidation. *Smith* v. *Flesher,* 12 Ohio St. 2d 107. There is much to be said in favor of consolidation where there is identity of issues, subject matter and parties. In such cases true and complete consolidation results in two or more cases becoming one and proceeding as one. Here, the only order made by the Common Pleas Court prior to ''trial'' was that the cases be ''consolidated for the purpose of trial.'' Such orders of limited consolidation are within the sound discretion of the court and are commonly made where the same subject matter is involved and where the interests of justice and of the parties will be best served by having a single trial, maintaining, however, the same identity of parties, pleadings, issues, verdicts and judgments as there would have been had there been no consolidation. As it is reasonably conceivable that such identity could have been maintained here we must conclude that the mere order of consolidation for purpose of trial did not constitute error. Whether the Common Pleas court thereafter committed error prejudicial to the director by virtue of the manner in which it handled the consolidation remains for consideration under the other assignments of error.

II. The second assignment is that the Common Pleas Court erred in overruling the motions for separate jury verdict. This involves a consideration of the character of the two proceedings and of the trial judge's theory and conduct of the trial. The appeal in the appropriation pro-

ceeding and the appeal in the road vacation proceeding are both essentially *de novo* with evidence being adduced on the issues of compensation and damages, which issues are tried to a jury. The appeal in the road vacation case involved only the issue whether and how much Arnold should be paid as compensation for property, or property rights, taken and for damages to the residue of his property arising solely from the vacation of Yant Road. The appeal in the appropriation case involved only the issue of how much Arnold should be paid as compensation for property, or property rights, taken for the construction of the highway improvement and for damages to the residue of his land resulting therefrom.

A road vacation proceeding in its essential aspects is tantamount to an appropriation case with respect to the issue of compensation and damages. As in the appropriation case, losses suffered in common with the general public (usually from an exercise of the police power of the sovereign) are considered *damnum absque injuria*, and, thus, no damages may be specifically or generally awarded for loss of indirect access over a public road to a highway and for the mere circuity of travel resulting from such loss of access. It is only when the right of direct access to an abutting road, and thereby to the public highway system, is taken, or so impaired as to constitute a take, that the landowner must be paid compensation in a road vacation proceeding for the taking of that property right and for damages resulting to the property remaining after such taking.

Here, predecessors in title had conveyed away all rights of direct access from the property in question to Route 25, including from the portion of the property underlying Yant Road. The predecessors in title and Arnold, after them, thus retained only a property right in the direct right of access to Yant Road and to State Road, and shared with the public the privilege of indirect access to Route 25 and to the rest of the public highway system by way of Yant Road and by way of State Road. The vacation of Yant Road in that portion thereof within the right of way of Route 25 did not in any way affect, infringe

upon, or constitute a taking, of any property right which Arnold had of direct access to Route 25, all of such property right having been previously conveyed to the state of Ohio by Arnold's predecessors in title. There being no taking of a property right, the commissioners and the Common Pleas Court could, in the vacation proceeding, neither award compensation for a taking nor compensation for damages to the residue of the property resulting from a taking.

This situation was not apparent from the record of the vacation proceeding as it existed before trial commenced and would not be apparent until evidence had been adduced showing the character of the vacation in its application to the property in question. As soon as it became conclusively apparent, as it did during the testimony of mutual witness Schroeder, that, as a matter of law, Arnold was not entitled to an award for compensation and damages in the road vacation proceeding, it became incumbent upon the trial court not to submit that issue to the jury and to enter judgment against Arnold on that issue.

Did the trial court do so? A complete review of the bill of exceptions indicates that it was the theory of the trial judge that the improvement involved consisted not only of the construction of the State Road overpass, with the attendant taking of land to provide additional State Road right of way to accommodate the soil necessary to elevate the road to the level of the overpass, but also consisted of the closing of Yant Road at the southeast right-of-way line of Route 25 by vacating all of Yant Road within the right of way of Route 25, and that by reason thereof the verdict in the appropriation case should reflect the impact on the residue of land of such vacation as well as the impact thereon of the construction of the overpass. It is apparent from the court's charge, the form of the verdict submitted, and the form and substance of the judgment entry that this theory was carried out in the submission to the jury, but that actually no charge was given, no verdict submitted or rendered, and no judgment entered relating to the road vacation proceeding as distinguished from the appropriation proceeding. The single verdict resulting was

not a single verdict for both appeals but was a verdict in the appropriation appeal and no verdict at all in the road vacation appeal. As we are now concerned only with the question of error as it affects the right of the director in the appropriation appeal, we conclude that in the conduct of that appeal the court did not commit error in overruling the motions for separate jury verdicts for each appeal.

III through VII. The director then assigns and argues together error of the Common Pleas Court, in essence, as follows:

III. In overruling the commissioners' motion to dismiss the road vacation appeal.

IV. In ruling that the landowner was entitled to damages for the vacation of Yant Road and in permitting the jury to consider the monetary amount of such damages.

V. In not admitting the testimony of the mutual witness Schroeder as to whether the land touched or abutted upon the portion of Yant Road vacated by the commissioners.

VI. In not sustaining the motion to strike the testimony of witness Magin because he included damages for the vacation of Yant Road in his opinion as to damages.

VII. In not giving appellant's special instruction to the jury that "as a matter of law * * * any damages resulting from the vacation of Yant Road * * * are not legally payable to the landowner herein, and that you are to disregard any such damages in arriving at your verdict."

The third assignment of error is without merit. The landowner was entitled to his appeal which could not, either at the time the motion was made or in any event here appearing, be dismissed. As heretofore discussed judgment should have been rendered at an appropriate time against the landowner on the merits of his claim, but the failure to dismiss the appeal from the road vacation proceeding or to render such judgment therein was not, in the light of the manner in which the trial was conducted, erroneous as far as the rights of the director were concerned in the appropriation appeal.

Nor did the refusal to admit the testimony of mutual witness Schroeder as to whether the land in question

abutted on the vacated portion of Yant Road constitute error as to the director. At that point of time in the proceedings the court had before it the transcript of the vacation proceeding before the commissioners and the conveyance from the predecessors in title to the state of Ohio of the right of direct access to Route 25. These documents spoke for themselves, and it was a question of law for the court and not a question of fact for the witness whether, despite the conveyance, the Arnold property remained so situated in relation to the portion of Yant Road vacated as to entitle Arnold to an award of compensation or damages.

The fourth, sixth and seventh assignments of error have a direct bearing on whether the appropriation appeal was properly submitted to the jury and, to a degree, involve problems of nomenclature.

In *Cleveland & P. Rd. Co.* v. *Ball*, 5 Ohio St. 568 at page 575, Bartley, C. J., said:

"The provisions of the Constitution of this state on this subject, are somewhat different from the provisions in the constitutions of some of the other states. *'Full compensation'* is required to be made to the owner *in money* for the appropriation of his property, as a condition precedent. To be a full compensation it must be a remuneration or recompense for that detriment or loss to the owner in the value of his property arising from *the taking of his property in connection with the use for which it is taken.* Where a piece or strip of land is taken and severed by the appropriation from its connection with other land of the owner, some elements of compensation necessarily enter into the computation besides the abstract value of the number of feet or acres of ground actually taken. These elements of compensation may be comprehended in the following: 1. The abstract value of the quantity of ground taken; 2. The value arising from the relative situation of the land, taken in its connection with the residue of the owner's land from which it is severed; and, 3. *The effect upon the value of the residue of the owner's land arising from the uses for which the appropriation is made.* These grounds of compensation will give the land-owner a recom-

pense for the loss in the value of his property caused by *the appropriation for the special purposes or use for which it is authorized. * * *"* (Emphasis added in part.)

See, also, *Grant* v. *Hyde Park,* 67 Ohio St. 166, equating "damages to the residue" to the third element of compensation above referred to; and *Smith* v. *Erie Rd. Co.,* 134 Ohio St. 135.

In the instant situation, in order to improve Route 25 to conform to interstate highway standards by the eliminations of crossings at grade, at least nine possible alternatives, of varying degrees of probability, existed:

1. To vacate Yant Road and cloverleaf State Road.

2. To vacate Yant Road and overpass State Road (as was done).

3. To vacate Yant Road and vacate State Road.

4. To overpass Yant Road and cloverleaf State Road.

5. To overpass Yant Road and overpass State Road.

6. To overpass Yant Road and vacate State Road.

7. To cloverleaf Yant Road and cloverleaf State Road (not very practical).

8. To cloverleaf Yant Road and overpass State Road.

9. To cloverleaf Yant Road and vacate State Road.

In any event, both to achieve the federal standards and to achieve the state's plans and the public's interests with reference to the highway system other than Route 25, it was not possible to do anything with the Yant Road intersection without also doing something to the State Road intersection, or *vice versa.* Thus, the improvement involved consisted of the vacating of Yant Road as much as it did the overpassing of State Road, and, though the triangular piece of land taken was physically taken to provide additional right of way for State Road, it was also taken to make it possible to vacate Yant Road and to bring Route 25 up to interstate standards.

Although the landowner was not entitled in the road vacation appeal to any compensation for property rights taken, since none were taken, and, for the same reason, was not entitled to be compensated for damages to the residue of his property, and although he was not entitled in the appropriation case to damages, so labeled, arising from

the loss of his privilege of indirect access to Route 25 resulting in circuity of travel to and from his land, nevertheless, he was entitled in the appropriation appeal to have the vacation of Yant Road considered as part of the improvement and part of the special purpose or use for which the appropriation was authorized in otherwise determining his right to, and the measure of, compensation.

Thus, as in the appropriation cases previously decided by the court and hereinbefore cited relating to the peculiarities of the improvement of Route 25 to become I-75, the *privilege* of Arnold and his actual and potential customers shared by them with the general public of entering and leaving Route 25 through either or both of its intersections with Yant Road and State Road, and by way of such roads reaching the filling station and restaurant property which had no *right* of direct access to and from Route 25, is an element entering fairly and directly into the question of market value. This element must be taken into consideration in determining the market value of Arnold's property as of the time of the take of a part of it in the improvement of such state highway to an interstate highway. In such determination there must also be considered as an element of, and as directly affecting, market value, the *right* which the state had (either alone or in conjunction with the commissioners) prior to and at the time of the take to alter the highway intersections and the manner and likelihood of the exercise of such right. In this respect the legislation in 1958 authorizing Route 25 to become I-75 indicated that the state's right to change the intersections would at some future time be exercised in a manner to eliminate intersections at grade, but, without reference to the specific plans for the intersections involved, the imminence of its exercise could be related only to its exercise elsewhere as part of the general highway improvement plans, and the nature of its exercise could only be considered or forecast by consideration of the possibilities existing at the location of these intersections as they related to the rest of the highway system at such location. With these considerations, the right of the state to make intersection change should be considered in every one of its

aspects bearing on market value, both positive and negative.

Thus, as time passed, elimination of these intersections at grade became more imminent. In consideration of the nature of the road system at this location the nine alternative possibilities of change existed, either with or without some compensation to the landowner, dependent on the alternative involved and whether that alternative would result in no taking, in a partial taking, or in a complete taking of the landowner's property. Cloverleafing of either Yant Road or State Road was highly improbable and, perhaps, impossible; vacating both roads was more likely; and what did happen was highly probable. Cloverleafing either road would probably result in a complete take and compensation to the extent of the full market value of the premises, vacating both roads would result in no take and in no compensation, and vacating one road and overpassing the other would result in a partial take with compensation for the part taken and for damages to the residue.

The after value is always determined by an appraisal of the market value of what remains, or what will remain, after the improvement has been completed. This appraisal will always reflect the actual conditions then existing, although in some situations (not here pertinent) it must be adjusted to exclude the impact of noncompensable attributes of value. See, for instance, *In re Appropriation for Hwy. Purposes,* 15 Ohio App. 2d 139. Thus, if the improvement has cut off access directly or indirectly to the interstate highway, or if the quantity of land remaining is insufficient for many uses, the after market value will, in all likelihood, be greatly depreciated. However, as always, the difference between the before market value and the after market value limits and measures the compensation to be paid to the landowner, and such part of that compensation as does not constitute reimbursement to him for land taken constitutes, instead, compensation to him for damages to the residue of his property.

In this respect a before market value, appreciated by the existence of indirect but convenient access to a major

highway and not otherwise depreciated, will result in a greater measure of damages to the residue. On the other hand, if that same before market value is depreciated, without consideration of the nature of the actual improvement to be made, by a reasonable anticipation that that indirect but convenient access will be adversely changed or terminated, there will result a lesser measure of damages to the residue. As the imminence and likelihood of that change or termination increases, the negative factor increases to the point where it may entirely counterbalance the positive factor. When the before market value is properly determined by the application of all the negative factors inherent in the situation, the noncompensable attributes of value are usually eliminated from the before market value leaving no occasion to adjust the after value to eliminate the impact thereon of such noncompensable factors.

In all these instances the before market value is not enhanced (nor damages to the residue enhanced) by the fact that the landowner will be compensated when a take occurs, but it is enhanced, if at all, only because the positive element of *privilege* of indirect access is not overcome by the imminence and likelihood of the exercise of the *right* of the state to alter or extinguish that privilege. Thus, in the situation here, in determining the before market value, all the factors bearing thereon except the actual improvment should be taken into consideration in all positive and negative aspects, including consideration of all the nine possible types of intersection change. When these are considered independently of the actual improvement, *i. e.,* the possibilities rather than the actuality, the before market value should be one invariable figure, notwithstanding that the actual improvement might in one case result in a take whereby the owner would receive some compensation or whether the actual improvement would result in a change where the owner would receive no compensation.

Tested by those principles, did the court commit error as assigned in the fourth, sixth and seventh assignments?

Examination of the bill of exceptions at the pages specified by the appellant shows that the trial judge consistently stated before the jury and to the jury to the effect that

there is only "one damage" arising from both the closing of Yant Road and the overpass of State Road, and "on that damage you will find the total damage caused by both things." In the light of the manner in which the road vacation appeal was essentially taken from the jury and only the appropriation appeal submitted, these statements to the jury were not erroneous and the third assignment of error is without merit.

Examination of expert witness Magin's testimony reveals that, notwithstanding he testified that twenty five to thirty per cent of the compensation he would allow to the property owner consisted of damages attributable to the closing of Yant Road, he likewise testified that in determining the before market value he took into consideration all the state's rights to change the intersection and that, in his opinion, such rights did not materially adversely affect market value. We cannot, therefore, conclusively say that his testimony should have been stricken because he included "damages for the vacation of Yant Road," as claimed in the sixth assignment.

As the trial judge by the manner in which he conducted the trial, as heretofore discussed, had confined the proceeding to the appropriation appeal, and was going to submit the matter to the jury on the sole issue of compensation for land taken and for damages to the residue in the appropriation case only, it would have been confusing to the jury and prejudicial to the landowner for him to have given the special instruction referred to in the seventh assignment of error. Although that instruction may have been a correct statement of law and particularly applicable to the road vacation appeal, the refusal to give a correct special instruction no longer constitutes prejudicial error *per se,* but prejudice to the appellant must affirmatively appear in the record. *Smith* v. *Flesher,* 12 Ohio St. 2d 107.

VIII. The director assigns error of the trial court in failing to establish prior to trial a date of take or valuation and in leaving such question to the speculation and conjecture of the jury, its general charge being ambiguous.

Consistent with the trial court's conclusion that the vacation of Yant Road and the overpassing of State Road

constituted one improvement, which conclusion has been concurred in by this court, that improvement started on February 1, 1965, when a barricade was erected on the right-of-way line of Route 25 where it crossed Yant Road.

Throughout the proceedings reference is made to the February 1, 1965, date, but the appraisers and landowner also testified generally to valuations on other dates from 1962 to 1965. After being importuned to establish the date of the take, the trial court said, "The court will do it at the proper time. I haven't heard all of the evidence, so I won't establish until I charge the jury at the end of the case." In its general charge the court instructed, "In determining market value, you must use the values of February 1, 1965, * * * . However, you must regard the property as it was approximately in early 1962, * * * ."

1962 has no importance whatsoever as a valuation date. The proper valuation date was February 1, 1965, and valuations as of that date had to be adjusted by the appraisers by eliminating all valuation factors reflecting knowledge of specific plans for the actual improvement to take place at the site no matter when or by what means such knowledge may have come about. If on February 1, 1965, knowledge of the actual improvement had operated to increase valuations above the point where they would have stood without such knowledge, then the appraisal as of February 1, 1965, should be equivalently decreased. If on February 1, 1965, knowledge of the actual improvement had operated to decrease valuations below the point where they would have stood without such knowledge, then the appraisal as of February 1, 1965, should be equivalently increased.

An accurate date of take, and thus of valuation, not having been established, the appraisers were left wholly at sea as to the proper time of valuation. To permit them to use and to testify to as early a valuation as 1962 permitted them to ignore the effect, either beneficial or adverse (and probably here adverse), of the increasing imminence of the elimination of intersections at grade occurring between 1962 and 1965.

Of necessity these rules of appraisal result in wholly

hypothetical valuations, but there is no alternative and that is one of the cogent reasons for permitting and requiring the use of experts to determine same.

As to the jury, they are not to "regard the property as it was approximately in early 1962." They are to regard the property and the before market value as it was on February 1, 1965, adjusted in accordance with the evidence, to eliminate and exclude any factors affecting market value as of that date attributable to knowledge of the character of the actual improvements.

In our opinion the failure of the trial court to fix the date of the take as February 1, 1965, prior to the testimony of the expert witnesses and its instructing the jury as to the date of the take in the manner in which it did, both constituted error prejudicial to the director.

IX. The director's ninth assignment of error is that the trial court erred in not permitting the mutual witness to testify that the landowner's predecessors in title had sold all right of access to I-75. We have discussed and disposed of this assignment of error adversely to the director in our consideration of the fifth assignment of error.

X. The tenth assignment is that the trial court erred in giving landowner's special instruction No. 1 to the jury "that in determining the fair market value of this property before the appropriation and vacation, you will make this determination as the property was, without being affected by any of the actions of the state of Ohio concerning this property, that is, before the actual plans were announced." For the same reasons discussed in our consideration of the eighth assignment of error relating to the date of take we are of the opinion that this special instruction was erroneous and that the giving of it prejudiced the appellant.

XI. The eleventh assignment involves alleged error in the giving to the jury of landowner's special instruction No. 2 "that compensation paid to a landowner shall be such as to make him whole, that is, such as to put him in as good a financial condition after the appropriation as he was before. In measuring such compensation while the standard of measure is market value, market value is not necessarily an end in and of itself, the ultimate object be-

ing the ascertainment of just compensation to the owner.''

The danger of that instruction in the present case is that the landowner was from time to time engaged in the filling station and restaurant business at this location. At other times, by means of a seemingly lucrative lease, he had leased the premises to others to conduct the same type of business with the lease to terminate at any time traffic was diverted by the state. Arnold, therefore, derived much income from the business ventures there conducted, which would terminate with the appropriation. This income was only indirectly related to the market value of the premises but had direct relation to his ''financial condition.'' He was entitled to recoup the value of the property taken from him but not entitled to recoup the loss of income to put him in as good a financial condition after the appropriation as he was before. Change of financial condition in this manner is equivalent to the loss of future business profits, which loss is not compensable in an appropriation action. *Preston, Dir.,* v. *Stover Leslie Flying Service, Inc.,* 174 Ohio St. 441.

The giving of such instruction was wholly erroneous and prejudicial to the rights of the director in the appropriation action.

XII. This assignment is that the trial court erred in not giving the director's special instruction to the jury ''that you must not include any allowance in your verdict for loss of business.''

That is a correct statement of law, and to deny same was error. The highest appraisal, other than Arnold's, for damages to the residue was Magin's in the amount of $112,800, yet the jury rendered a verdict of $119,900 for damages to the residue. Arnold, when asked his opinion of ''the reasonable market value of your facilities here prior to'' knowledge of the specific plans for intersection change, answered, ''I felt—that is what I based my rental on, I felt that the property *and the business* was worth one hundred and fifty thousand ($150,000) dollars * * *.'' (Emphasis added.) He testified that he valued ''the entire land'' from sixty to sixty-five thousand dollars and that he valued the residue at $3,500. He concluded that he should

be compensated in the amount of $146,500, the difference between his $150,000 before value and his $3,500 after value, of which $18,000 should be compensation for the 0.30 acre taken. He testified that his valuation is due primarily "to the business that I had done."

Under those circumstances, it seems obvious that the jury included loss of business in its assessment of compensation for damages to the residue. It is our opinion, therefore, that the failure to give the requested instruction was not only erroneous but was prejudicial to the director.

XIII. The director's thirteenth assignment of error relates to the court's not giving to the jury his special instruction "that you must not include any allowance in your verdict for loss of traffic accessibility to the Arnold property from State Route 25 via Yant and State Roads."

The accessibility of traffic *to Arnold's property* is certainly not a property right of Arnold's. Compare *In re Appropriation for Hwy. Purposes*, 15 Ohio App. 2d 139, in its relation to traffic flow. As hereinbefore discussed only the taking of a *right* of access *from Arnold's property to a highway* would be compensable. See assignment of error number 2, *In re Appropriation for Highway Purposes*, 6 Ohio App. 2d 6, 12, where this court held no error in giving an instruction "that the landowners are not entitled to compensation or damages for loss of access to or from interstate Route 75."

Although the special instruction refused may have properly stated the law, there is no affirmative showing in the record that its refusal was prejudicial to the director.

XIV. This assignment is that the trial court erred in not giving the director's special instruction No. 13 to the jury, which instruction was modeled on the law of the *Williams* and the *Winkelman* appropriation cases, 6 Ohio App. 2d 6 and 13 Ohio App. 2d 125, respectively. This instruction also constituted a correct statement of law but is unduly limited, on the facts of this case, in respect to the possible improvements, and, as it does not affirmatively show in the record that the failure to give same prejudiced the rights of the director, we cannot conclude that there was prejudicial error.

XV. The fifteenth and last assignment of error is that of the failure to sustain the director's motion to strike the testimony of the landowner's witnesses Arnold and May, in that they did not consider the positive factors of the landowner's privilege of use of the road intersections nor the negative factors of the director's and the commissioners' right to alter such intersections without compensation to Arnold. Examination of the testimony of Arnold and May shows that they did not appear to understand that these considerations were necessary in making their appraisals and that they did not hypothetically consider, in particular, the negative factors. For these reasons their testimony *as to before market value*, even if such testimony had had reference to the proper date of take, had no probative value and was misleading, and it was prejudicial error for the court not to strike *such testimony* from the consideration of the jury when moved to do so.

We note in an opinion filed by the trial judge that he considered the verdict excessive and correctable by remittitur. However, we are of the opinion that the error in the establishment of a date of take and placing of undue emphasis by the court and by the appraisers in determining the before market value on whether the landowner would be compensated for loss of indirect access to Route 25 by reason of the nature of the actual improvement leaves all the appraisal evidence of insufficient probative value to constitute a proper foundation for remittitur.

For the prejudicial error in the particulars hereinbefore determined and found, the judgment of the Common Pleas Court is reversed and vacated and the appropriation cause is remanded thereto for new trial on appeal and for further proceedings as provided by law.

*Judgment reversed in case No. 1409.*
*Appeal dismissed in case No. 1410.*

Cole, P. J., and Younger, J., concur.