THE STATE OF OHIO, APPELLEE, *v.* FARMER, APPELLANT.

(No. L-84-115—Decided December 7, 1984.)

Anthony G. Pizza, prosecuting attorney, and *Ruth Ann Franks,* for appellee.

*Mohamed Y. Shousher,* for appellant.

WILEY, J. On October 6, 1983, at 9:00 p.m., a Toledo police officer confronted appellant, James Farmer, at the front steps of a house which was being "raided" pursuant to a search warrant. The officer, after briefly questioning appellant, conducted a pat-down search of appellant. The search revealed a handgun concealed on appellant's person. Appellant was arrested and charged with carrying a concealed weapon in violation of R.C. 2923.12(A).

Prior to trial, appellant filed a motion to suppress the evidence obtained from the officer's pat-down search. On February 13, 1984, a hearing on appellant's motion was held before the Lucas County Court of Common Pleas. The trial court denied the motion. On February 15, 1984, appellant withdrew his initial plea of not guilty and entered an oral and written plea of "no contest," whereby the trial court determined that appellant was guilty of the charge of carrying a concealed weapon. Appellant, in

his change of plea, expressly reserved the right to appeal the trial court's denial of appellant's motion to suppress. On March 26, 1984, the trial court sentenced appellant.

From that judgment, appellant timely appeals, setting forth the following as his sole assignment of error:

"The trial court erred in overruling the appellant's motion to suppress evidence seized in a warrantless search."

In his assignment of error, appellant contends that the trial court erred in denying appellant's motion to suppress the evidence seized as a result of the warrantless search of appellant's person for the reason that the circumstances did not justify conducting a "stop and frisk" procedure in this case.

Our review of the record reveals that Toledo Police Officer David Smith, a fifteen-year veteran of the Toledo Police Department, testified at the hearing on appellant's motion to suppress, setting forth the following facts and circumstances regarding appellant's arrest. On October 6, 1983, Smith was assisting several "Metro" officers execute a search warrant. The specific location Smith was assigned to patrol was the front of the house—which was the subject matter of the search warrant.

At approximately 9:00 p.m., Smith was proceeding to his designated location. Prior to arriving at the front of the house, Smith heard the other officers enter the back of the house. Smith then hurried to the front of the house where he "literally" ran into appellant who was standing in a dimly-lit area in front of the porch steps. Smith briefly questioned appellant. Smith then, confronted at night by appellant, unconvinced by appellant's response to the questions, and unsure of whether appellant was arriving or leaving the house (which was subject to the search warrant), conducted a pat-down search in order to protect himself. The pat-down search revealed that appellant was carrying a handgun. Appellant was, thereafter, placed under arrest.

In *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 283], the United States Supreme Court upheld the limited pat-down search or "frisking" of a suspect on the street where the police had a reasonable belief, based upon his observation of the suspect's behavior and the reasonable inferences drawn therefrom in light of his experience, that criminal activity might be afoot and that the suspect might be armed and dangerous.

The United States Supreme Court stated that while the Fourth Amendment clearly applied to protect the rights of individuals who can be found in public places, the Constitution did not forbid all searches and seizures; it forbids only *unreasonable* searches and seizures. *Terry, supra,* at 9. The question then centers upon the reasonableness of the search and seizure which requires a two-part inquiry: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry, supra,* at 20.

The Supreme Court further stated that there is " 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " *Terry, supra,* at 21. The Supreme Court then stated:

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or

seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. *Carroll* v. *United States* 267 U.S. 132 (1925); *Beck* v. *Ohio*, 379 U.S. 89, 96-97 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e.g., *Beck* v. *Ohio, supra; Rios* v. *United States*, 364 U.S. 253 (1960); *Henry* v. *United States,* 361 U.S. 98 (1959). And simple ' "good faith on the part of the arresting officer is not enough." . . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.' *Beck* v. *Ohio, supra*, at 97." *Terry, supra*, at 21-22.

Since the *Terry* decision, the United States Supreme Court, in *United States* v. *Cortez* (1981), 449 U.S. 411, considered the sufficiency of an officer's reasons for stopping and frisking a suspect. The Supreme Court stated:

"Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. *But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account.* Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See, e.g., *Brown* v. *Texas, supra,* at 51; *United States* v. *Brignoni-Ponce, supra,* at 884.

"The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, *a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.*

"*The process does not deal with hard certainties, but with probabilities.* Long before the law of probabilities was articulated as such, practical people formulated certain commonsense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, *the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.*

"The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Chief Justice Warren, speaking for the Court in *Terry* v. *Ohio, supra,* said that, '[t]his demand for specificity in the information upon which police action is predicated is *the central teaching of this Court's Fourth Amendment jurisprudence.' Id.,* at 21, n. 18 (emphasis added). See also *Brown* v. *Texas, supra,* at 51; *Delaware* v. *Prouse, supra,* at 661-663; *United States* v. *Brignoni-Ponce, supra,* at 884." (Em-

80

phasis added in part.) *Cortez, supra,* at 417-418.

The Supreme Court, in *Cortez,* further emphasized "* * * the imperative of recognizing that, when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *Cortez, supra,* at 419.

Applying the foregoing to the facts of this case, we find that the officer's conduct, considered in light of all the circumstances (including but not limited to appellant's unexplained presence on property which was subject to the officer's night-time execution of a search warrant) was reasonable and, therefore, was not a violation of appellant's Fourth Amendment rights.

Further, this court has previously recognized that:

"While the Fourth Amendment prohibition against unreasonable search and seizure constitutes one of the most important guarantees of freedom in a democratic society, the protection of that right must be balanced with the public's legitimate interest in insuring the safety of their persons, homes and public places. In balancing these interests, due deference must be accorded the training and experience of dedicated law enforcement officers, especially, as in this case, where restrained and reasonable actions are taken in order to prevent the commission of a crime. The furtherance of crime prevention must not be discouraged by the hypertechnical application of legal standards for determining probable cause." *State v. Glover* (Apr. 30, 1984), Lucas App. No. L-83-333, unreported.

Considering the foregoing, appellant's sole assignment of error is not well-taken.

On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

CONNORS, P.J., and RESNICK, J., concur.

WILEY, J., retired, of the Sixth Appellate District, sitting by assignment.